## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| MESILLA VALLEY EXTRACTS, LLC; ROYAL CANNABIS, LLC d/b/a BAKED CHICKEN FARM; SUPER FARM, LLC d/b/a SMOKEY ROAD FARMS; IMPACT FARMS LLC; CHADCOR HOLDINGS NM LLC d/b/a TOP CROP CANNABIS LLC; MYLARS LLC; ROLLIN LOVE, LLC; and DESERT PEAKS FARMS, INC., | Case No. 2:24-cv-01072-KG-DLM |
| Plaintiffs, | |
| v. | **FIRST AMENDED COMPLAINT** |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY and UNITED STATES CUSTOM & BORDER PROTECTION, | |
| Defendants. | |

NOW COME the Plaintiffs MESILLA VALLEY EXTRACTS, LLC, ROYAL CANNABIS, LLC d/b/a BAKED CHICKEN FARM; SUPER FARM, LLC d/b/a SMOKEY ROAD FARMS; IMPACT FARMS LLC; CHADCOR HOLDINGS NM LLC d/b/a TOP CROP CANNABIS LLC; MYLARS LLC; ROLLIN LOVE, LLC; and DESERT PEAKS FARMS, INC., by their undersigned counsel, and for their cause of action against Defendants, UNITED STATES DEPARTMENT OF HOMELAND SECURITY ("DHS") and UNITED STATES CUSTOM & BORDER PROTECTION ("CBP"), allege as follows:

### INTRODUCTION

1.      Plaintiffs are New Mexico-licensed state-legal cannabis businesses that have had their state-legal cannabis products, cash, and other property summarily seized by the CBP at CBP

checkpoints throughout New Mexico without being afforded any due process of law as required by the United States Constitution. This has resulted in loss of revenue, upset business operations and expectations, difficulties with the New Mexico cannabis regulators and the required seed-to-sale tracking obligations (as defined below), and other damages which have exceeded $1,000,000. These summary seizures are ongoing and becoming more frequent.

2.      These seizures are happening even though recreational cannabis is currently legal in 24 states (including New Mexico) and Washington, D.C. Another 17 states have legalized the use of cannabis for medical purposes. Cannabis has been legalized in some form or decriminalized in all but four states.

3.      Equally problematic is the geographically disparate application. Based on information and belief, despite the fact that the CBP operates checkpoints within two other states along the United States southern border which have similarly legalized intrastate medical and recreational cannabis use—Arizona and California—the CBP has only taken steps to "enforce" the Controlled Substance Act ("CSA") against state-legal operators in the state of New Mexico. The CBP's rogue enforcement efforts have resulted in a geographically disparate application of the CSA in violation of the Fifth and Tenth Amendments of the United States Constitution.

4.      These seizures are also happening against the backdrop of federal rescheduling of cannabis from a Schedule I drug to a Schedule III drug under the CSA, which would relax many of the current restrictions on cannabis. The Department of Justice, based on a recommendation from the Department of Health and Human Services, recently issued a proposed rule to reschedule cannabis, which now awaits the Drug Enforcement Administration's formulation of a final rule.

5.      As such, Defendants' seizures are not only plainly illegal under the Constitution (individuals in New Mexico—but nowhere else—are detained without charges and placed on international drug trafficking lists without any opportunity to be heard; state-legal products, cash, and vehicles are summarily seized with no process for challenging the seizure or obtaining return despite no prosecution by the Department of Justice on the back end that could otherwise provide a check on the CBP's rogue conduct), but they also conflict with the Federal Government's longstanding policy of not interfering with state-legal cannabis programs.

6.      As but one egregious example of the ongoing pattern of unconstitutional enforcement methods, and as discussed further below, an employee of Plaintiff Royal Cannabis (as defined below) was stopped at the CBP checkpoint located at 1997 Highway 54 South in Alamogordo, New Mexico on August 28, 2024, as she was transporting fully state-legal cannabis-infused beverages belonging to Royal Cannabis. CBP agents seized the state-legal products, fingerprinted the employee and detained her for several hours under inhumane conditions. Specifically, CBP attempted to search the Royal Cannabis employee, an adult woman small in stature, for weapons—in full view of traffic waiting to pass through the checkpoint—even though it was visibly apparent that she did not have any weapons on her person. CBP then detained her in a holding cell inside the checkpoint where she was only allowed to use the restroom inside of a locked cell in full view of the CBP. Toilet paper was not within reach but was stored on a shelf 3-4 feet away behind the sink, and there was no hand soap available to wash her hands or any dryer or paper towels to dry her hands. She was even deprived of clean drinking water during the hours-long detention.

3

7.     Further, even though CBP advised Royal Cannabis's employee that she was not being charged with any crime, CBP seized the employee's personal vehicle (that she relies upon for her livelihood) and refused to release her on her own recognizance. Instead, against the employee's will and without her consent, CBP confined her in an unsanitary locked cell (furnished only with a cot covered in black mold resulting in toxic and hazardous air quality inside) until someone arrived to take her home. All of this notwithstanding the fact that Royal Cannabis's employee was transporting property that is completely legal in New Mexico and was fully documented in compliance with New Mexico's laws and regulations, including the seed-to-sale tracking requirements.

8.     As mentioned above, as offensive and humiliating as this event was, it is only one example of the CBP's ongoing pattern of unconstitutional enforcement methods at checkpoints in New Mexico which have resulted in the deprivation of state-legal property rights without due process and the disparate treatment of these legitimate state businesses, and their employees, as compared to other similarly situated state-legal cannabis businesses operating in other border states.

## JURISDICTION AND VENUE

9.     This is an action brought against Defendants pursuant to the Fifth and Tenth Amendments of the United States Constitution and 18 U.S.C. § 983.

10.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 because Plaintiffs' claims arise under the United States Constitution.

11.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred and where a substantial part of the property that is the subject of the action is situated.

## THE PARTIES

12.     Plaintiff MESILLA VALLEY EXTRACTS, LLC ("Mesilla Valley"), is a New Mexico limited liability company with its principal place of business at 770 N. 17th Street, Las Cruces, NM 88005, and has a license to operate in the State of New Mexico as a Cannabis Manufacturer Class III.  Pursuant to that license, Mesilla Valley is authorized to manufacture state-legal cannabis products and deliver those products to licensed dispensaries across the state.

13.     Plaintiff ROYAL CANNABIS, LLC d/b/a BAKED CHICKEN FARM ("Royal Cannabis") is a New Mexico limited liability company with a principal place of business located at 415 San Benito, Berino, NM 88045, and has a license to operate in the State of New Mexico as a Vertically Integrated Cannabis Establishment. Pursuant to that license, Royal Cannabis is authorized to grow, manufacture, retail, and distribute state-legal cannabis products to local retailers and manufacturers across the state.

14.     Plaintiff SUPER FARM, LLC d/b/a SMOKEY ROAD FARMS ("Super Farm") is a New Mexico limited liability company with its principal place of business located at 12702 Smokey Rd, La Mesa, NM 88044, and has a license to operate in the State of New Mexico as a Cannabis Producer and a Vertically Integrated Cannabis Establishment. Pursuant to that license, Super Farm is authorized to grow, manufacture, retail, and distribute state-legal cannabis products to local retailers and manufacturers across the state.

15.     Plaintiff IMPACT FARMS LLC ("Impact Farms") is a New Mexico limited liability company with its principal place of business located at 6831 Glenturret Way NE, Albuquerque, NM 87113, and has a license to operate in the State of New Mexico as an Integrated Cannabis Microbusiness, with an active Cannabis Manufacturer Class III license. Pursuant to that license, Impact Farms is authorized to manufacture, retail, and distribute state-legal cannabis products to local retailers across the state.

16.     Plaintiff CHADCOR HOLDINGS NM LLC d/b/a TOP CROP CANNABIS LLC ("Chadcor") is a New Mexico State limited liability company with its principal place of business located at 2240 E Lohman Ave., Unit 1, Las Cruces, NM 88001, and has a license to operate in the State of New Mexico as a Vertically Integrated Cannabis Establishment. Pursuant to that license, Chadcor is authorized to grow, manufacture, retail, and distribute state-legal cannabis products to local retailers and manufacturers across the state.

17.     Plaintiff MYLARS LLC ("Mylars"), is a New Mexico limited liability company with its principal place of business located at 401 N 17th St, Ste 4, Las Cruces, NM 88005, and has a license to operate in the State of New Mexico as a Cannabis Manufacturer and Distributor. Pursuant to that license, Mylars is authorized to manufacture, market and distribute state-legal cannabis products to local retailers across the state.

18.     Plaintiff ROLLIN LOVE, LLC ("Rollin Love"), is a New Mexico limited liability company with its principal place of business located at 2410 7th St., Las Vegas, NM 87701, and has a license to operate in the State of New Mexico as a Cannabis Dispensary. Pursuant to that license, Rollin Love is authorized to sell state-legal cannabis products to consumers and patients.

19. Plaintiff DESERT PEAKS FARM, INC. ("Desert Peaks") is corporation incorporated in the state of New Mexico with is principal place of business located at 4884 S. Main Street, Mesilla Park, NM 88047, and has a license to operate in the State of New Mexico as a Cannabis Producer. Pursuant to that license, Desert Peaks is authorized to grow and distribute state-legal cannabis products to local retailers and manufacturers.

20. Defendant UNITED STATES OF AMERICA DEPARTMENT OF HOMELAND SECURITY is an executive department of the United States created to prevent terrorist attacks within the United States and whose mission includes, *inter alia*, ensuring that the overall economic security of the United States is maintained through efforts, activities, and programs aimed at securing the homeland, and monitoring connections between illegal drug trafficking and terrorism, coordinating efforts to sever such connections, and otherwise contributing to efforts to interdict illegal drug trafficking.

21. Defendant UNITED STATES CUSTOM & BORDER PROTECTION is the largest federal law enforcement agency of DHS. CBP is charged with keeping terrorists and their weapons out of the U.S. while facilitating lawful international travel and trade. It is responsible for border management and control and is authorized to operate checkpoint locations along the U.S.-Mexico border and for 100 miles into the interior of the United States from any land or maritime border.

## FACTUAL BACKGROUND

22. On April 12, 2021, New Mexico Governor Michelle Lujan Grisham signed the Cannabis Regulation Act ("CRA"), a bill to legalize cannabis for adult use. N.M. Stat. § 26-2C-1, *et seq*. The CRA legalized the cultivation, manufacturing, purchasing, possession, and consumption of recreational cannabis for adults twenty-one (21) years of age and older.

23.     In addition, the CRA combined the regulation of both adult-use and medical cannabis into a single framework, administered by the Cannabis Control Division (the "CCD"), which is tasked with protecting public safety with respect to the use of cannabis products while promoting good business practices and economic growth in New Mexico. *See* N.M. Stat. § 26-2C-3.

24.     Under the CRA, the first licensed sales of recreational cannabis began on April 1, 2022.

25.     Under the CRA, the CCD was required to promulgate rules and procedures to, *inter alia*, promote and encourage full participation in the cannabis industry by representatives of communities that have been disproportionately harmed by rates of arrest through the enforcement of cannabis prohibitions in law and policy, rural communities likely to be impacted by cannabis production, and agricultural producers from economically disadvantaged communities, as well as promote and encourage racial, ethnic, gender, and geographic diversity and New Mexico residency among license applicants, licensees, and cannabis industry employees. *See* N.M. Stat. § 26-2C-3.

26.     The CCD promulgated mandatory rules and regulations related to cannabis establishments' recordkeeping and tracking of cannabis from seed until sale (the "Seed-to-Sale Tracking"), in part to prevent the diversion of cannabis products to unregulated and illegal markets in the state. *Id.* at § 26-2C-3(B)(3)(b).

27.     The CCD also promulgated mandatory rules and regulations requiring all licensees to promptly inform the CCD in writing of, *inter alia*, any theft of cannabis or cannabis products or confiscation of cannabis or cannabis products by legal authorities and requiring licensees to provide the barcode numbers of the manifests that were seized and copies of the manifests affected.

28.     Property is itself a right created by state law, and by enacting the CRA, the state of New Mexico created a property right in state-legal cannabis products, giving Plaintiffs as much a property right to those products as they have to any other state-legal property.

29.     New Mexico borders Mexico and CBP operates various vehicle checkpoints up to 100 miles into the interior of the State.

30.     CBP operates similar checkpoints in other border states, including California and Arizona.

31.     The Federal Government once imposed an absolute ban on marijuana. More recently, however, the Federal Government legalized the hemp form of cannabis and has significantly retreated from its prior position on the marijuana form of cannabis through a variety of measures, including the "Cole Memorandum,"[1] "FinCEN Guidance,"[2] and the "Rohrabacher-Farr Amendment."[3] These measures established a "hands off" policy by the Federal Government towards state-legal cannabis programs and individuals who comply with state cannabis laws.

---

[1] In 2013, after several states legalized certain marijuana-related activities, the United States Department of Justice Deputy Attorney General James M. Cole issued a memorandum (the "Cole Memo") for all United States Attorneys providing guidance about marijuana enforcement under the CSA. The Cole Memo advised federal prosecutors to focus on certain priority issues related to cannabis, including keeping cannabis away from minors, but generally not interfere with state-legal cannabis companies. Although the Cole Memo was rescinded by Attorney General Jeff Sessions on January 4, 2018, the Biden administration tacitly reverted to its guidance.

[2] In 2014 the Department of the Treasury ("Treasury") adopted recommendations from the Cole Memo in guidance issued by its Financial Crimes Enforcement Network ("FinCEN"). Despite the repeal of the Cole Memo, FinCEN has confirmed that the FinCEN Guidance remains in effect and Treasury indicated it will continue to remain in place until a better solution is found.

[3] Congress recognized the existence of state medical marijuana markets through a spending bill rider known as the Rohrabacher–Farr Amendment that prohibits the Department of Justice from using its funds to interfere in state-legal medical marijuana markets.

32.     Despite the legality of Plaintiffs' businesses under New Mexico law and the absence of federal criminal enforcement against Plaintiffs in New Mexico, in 2024, the CBP adopted a conflicting policy and began summarily seizing state-legal cannabis products and related property, including cash and, most recently, vehicles used in connection with these state-legal businesses, discovered at CBP checkpoints in the state, without providing any due process or opportunity to contest the seizures of the state-legal cannabis products and United States currency.

33.     CBP has also engaged in a practice of detaining individuals employed by Plaintiffs, taking their fingerprints and mugshots, and entering them onto federal smuggling, racketeering, and international drug trafficking lists, only to release them without charges when the local federal authorities inevitably refuse to prosecute based on the well-known "hands off" policy.

34.     Plaintiffs pay significant taxes in the state of New Mexico (and to the Federal Government for that matter), are legally licensed by the CCD under the CRA, and contribute to the economic growth of the state; however, CBP is treating their legal intrastate marijuana operations differently from any other enterprise that is legal under New Mexico law and is depriving them of their state-legal property interests without providing due process of law.

35.     The Fifth Amendment of the United States Constitution protects "property," not just property that CBP approves of, and there is no other example of the Federal Government seizing businesses' state-legal property.

36.     CBP's policy and practice at the New Mexico checkpoints are having an immediate and deleterious impact on these state-legal businesses in the form of lost revenues, delays in production, interference with business operations and expectancies, and even the closure of cannabis cultivation operations in the southern part of the state.

37.     CBP's actions also disparately affect state-legal users of medical and recreational marijuana whose access to state-legal products is affected by each summary seizure.

38.     Importantly, CBP's actions are having a rippling effect and, if left unchecked, have the potential to undermine New Mexico's entire regulatory scheme under the CRA. By failing to provide licensees such as Plaintiffs with due process and an accounting of the products that it seizes, CBP is preventing New Mexico from verifying reported seizures of state-legal cannabis products and creating an opportunity for bad actors to falsely report product seizures and subsequently sell unseized product on the black market, not subject to taxation and regulation by the state.

39.     The equal protection component of the Due Process Clause of the Fifth Amendment of the United States Constitution precludes the unequal application of federal law to individuals who are similarly situated and precludes federal law enforcement from making decisions whether to enforce federal laws based on arbitrary classifications.

40.     The Tenth Amendment of the United States Constitution guarantees that the states be treated as equal sovereigns and prohibits federal law enforcement from applying or enforcing federal law in a geographically disparate manner.

41.     Along the United States-Mexico border, the CBP operates checkpoints in four states—Arizona, California, New Mexico, and Texas.

42.     Like New Mexico, Arizona and California have enacted state laws legalizing intrastate medical and recreational cannabis use similar to the CRA. *See* Ariz. Rev. Stat. Title 36, Chapter 28.1 (Arizona Medical Marijuana Act) ("AMMA"); Ariz. Rev. Stat. Title 36, Chapter 28.2

(Smart and Safe Arizona Act) ("SASAA"); Cal. Bus. and Prof. Code § 26000, *et seq.* (Medicinal and Adult Use Cannabis Regulation and Safety Act) ("MAUCRSA").

43.    Like under the CRA, the Bureau of Marijuana Licensing is responsible for licensing and regulating Arizona's medicinal and adult-use cannabis programs under the AMMA and the SASAA and the Department of Cannabis Control is responsible for licensing and regulating California's medicinal and adult-use cannabis programs under the MAUCRSA.

44.    Like New Mexico, Arizona and California have promulgated rules and regulations related to cannabis establishments' recordkeeping and tracking of cannabis products. *See, e.g.*, Ariz. Rev. Stat. § 36-2854.01; Ca. Bus. and Prof. Code §§ 26067-26069.

45.    Upon information and belief, state-legal cannabis businesses in Arizona and California transport state-legal cannabis products through the CBP checkpoints within those states but the CBP does not summarily seize the state-legal cannabis products, the vehicles used to transport those products, or the cash proceeds of those state-legal transactions, pursuant to the CSA.

46.    Upon information and belief, the CBP is not diverting its resources to seize state-legal cannabis in Arizona and California under the CSA because of the Federal Government's "hands off" policy towards state-legal cannabis regimes and the urgent need to focus all of Defendants' resources on border security along the United States-Mexico border.

47.    Upon information and belief, New Mexico is the only border state where CBP is engaged in this practice of summarily seizing, and ultimately destroying, state-legal cannabis products and summarily seizing related property. In other words, CBP does not subject similarly situated state-legal cannabis entities in any other border state that has legalized cannabis use to the

same pattern of unconstitutional enforcement of federal law that it subjects Plaintiffs to in New Mexico. Rather, without any explanation or justification, much less a rational one, the CBP has opted to divert its limited resources and selectively enforce federal law only within New Mexico against Plaintiffs who are state-legal New Mexico businesses to their detriment, rather than ensure the border is secure in that State.

48.    There are no legitimate prosecutorial factors that would justify the CBP making different prosecutorial decisions with respect to Plaintiffs and the state-legal cannabis businesses in Arizona and California.

49.    The CBP's practice of summarily seizing state-legal cannabis products and associated property in New Mexico but not Arizona or California has resulted in a geographically disparate application of the CSA by the CBP and interferes with New Mexico's core sovereign police powers and right to regulate intrastate commerce in violation of the Tenth Amendment.

50.    Plaintiffs were not notified that CBP agents in New Mexico planned to depart from the long-standing Federal "hands off" policy regarding state-legal cannabis regimes prior to CBP initiating its rogue campaign of summarily seizing state-legal cannabis products and related property in New Mexico (and only New Mexico).

51.    The specific CBP seizures of Plaintiffs' property in violation of Plaintiffs' constitutional rights are set forth in detail below.

**I.    CBP Seizes State-Legal Cannabis Products Belonging to Chadcor While Being Transported to Impact Farms Pursuant to a Service Order.**

52.    On February 14, 2024, at the checkpoint located on Interstate 25 north of Las Cruces, New Mexico, CBP seized—for the first time since the first licensed sales of recreational

cannabis began on April 1, 2022—state-legal cannabis products belonging to Chadcor and detained Chadcor's delivery driver for several hours.

53.    Chadcor's delivery driver was in route to Impact Farms pursuant to a state-legal service order whereby Impact Farms would convert the state-legal cannabis flower into state-legal pre-roll joints, and presented at the checkpoint booth to answer the CBP's questions.

54.    The CBP had drug sniffing canines on patrol at the checkpoint when Chadcor's driver arrived, and the canine signaled a positive alert on the Chadcor driver's vehicle.

55.    CBP instructed Chadcor's driver to pull over to the side so CBP could search the vehicle.

56.    Chadcor's driver informed CBP that he was transporting state-legal cannabis products and offered to show CBP a manifest to verify the cannabis was compliant with the CRA and CCD regulations.

57.    Once CBP discovered the state-legal cannabis products in the vehicle belonging to Chadcor and Impact Farms, it seized the state-legal cannabis products and advised Chadcor's driver they would be burning the seized products.

58.    CBP also detained Chadcor's driver for several hours, took his mugshot, scanned his fingerprints, and entered him into the federal database for racketeering and international drug trafficking even though he was not being charged with any crimes.

59.    The Chadcor state-legal cannabis products that CBP seized were all documented as required by New Mexico law and regulations promulgated by the CCD, including Seed-to-Sale Tracking, and the delivery driver presented that information to CBP at the checkpoint.

60.    The Chadcor products that CBP seized had a retail value of $139,000.00.

61.    CBP assured Chadcor's driver that a letter would be sent within two weeks with instructions for how Chadcor could be reimbursed for the seized, and subsequently-destroyed, state legal products.

62.    Yet neither Chadcor nor its driver received any paperwork describing the detention or confirming the seizure of the property or providing any procedure to challenge said detention and seizure.

63.    The lack of due process in connection with the first-of-its-kind seizure of state-legal cannabis by CBP resulted in a loss of revenue and has interfered with Chadcor's ability to comply with Seed-to-Sale Tracking requirements under the CRA and its ongoing business relationships and expectancies.

64.    CBP's summary seizure of Chadcor's state-legal cannabis product also damaged Impact Farms due to a gap in Impact Farms's production schedule.

**II.    CBP Seizes Super Farm's State-Legal Cannabis Products.**

65.    On March 26, 2024, a third-party delivery service was delivering state-legal cannabis products from Super Farm's facility to its vendors in Albuquerque and other areas in Northern New Mexico.

66.    When the driver presented at the Interstate 25 checkpoint north of Las Cruces, New Mexico, CBP discovered and seized the products.

67.    The Super Farm state-legal cannabis products that CBP seized were all documented as required by New Mexico law and regulations promulgated by the CCD and the delivery driver presented that information to CBP at the checkpoint.

68.    The Super Farm state-legal cannabis products that CBP seized had a total wholesale value of $21,000.00 and a total retail value of over $55,000.00, and consisted of bulk cannabis flowers, hash rosin concentrates, and vape pens.

69.    CBP did not provide Super Farm with any process prior to the March 26, 2024 seizure or any post-seizure documentation regarding the products it seized, thereby interfering with Super Farm's ability to comply with Seed-to-Sale Tracking requirements under the CRA and its ongoing business relationships and expectancies.

70.    On May 24, 2024, CBP seized another Super Farm shipment of state-legal cannabis products after CBP stopped a third-party delivery driver while she was driving in Rincon, New Mexico after passing through a CBP checkpoint without incident.

71.    A CBP canine gave a positive alert on the vehicle on the scene and CBP took both the vehicle and the delivery driver to the CBP Interstate 25 checkpoint where CBP detained the driver, fingerprinted her, and charged her with drug smuggling.

72.    CBP eventually dropped the charges and returned the driver's vehicle but retained the state-legal cannabis product and cash parcels belonging to Super Farm.

73.    The Super Farm state-legal cannabis products that CBP seized were all documented as required by New Mexico law and regulations promulgated by the CCD and the delivery driver presented that information to CBP at the checkpoint.

74.    The Super Farm state-legal cannabis products that CBP seized, consisting of hash rosin, vape carts, and bulk cannabis flower, had a wholesale value of $4,200.00 and a retail value of over $12,000.00.

75. The CBP did not provide any process or documentation regarding the state-legal cannabis products that it seized on May 24, 2024, again interfering with Super Farm's ability to comply with Seed-to-Sale Tracking requirements under the CRA and its ongoing business relationships and expectancies.

76. CBP never notified Super Farm or the driver of the seizure of its state-legal product and never provided it with any process or post-seizure opportunity to challenge the seizure.

**III.    CBP Seizes State-Legal Cannabis from Mylars.**

77. On March 26, 2024 at the Interstate 25 checkpoint north of Las Cruces, CBP seized state-legal cannabis products belonging to Mylars that was being transported by a third-party transportation service.

78. The Mylars state-legal cannabis products that CBP seized were all documented as required by New Mexico law and regulations promulgated by the CCD and the delivery driver presented that information to CBP at the checkpoint.

79. The Mylars state-legal cannabis products that CBP seized included 388 1-gram distillate carts having a retail value of $12,000.00.

80. Neither Mylars nor the driver was given any notice of the seizure by CBP or any paperwork to account for the products seized in accordance with the Seed-to-Sale Tracking requirements under the CRA.

81. CBP also seized Mylars' state-legal cannabis products on July 19, 2024, at the same checkpoint north of Las Cruces on Interstate 25 from the same third-party transportation service, again without any notice, paperwork, or post-deprivation procedure to challenge the seizure.

82.     The Mylars state-legal cannabis products that CBP seized were all documented as required by New Mexico law and regulations promulgated by the CCD and the delivery driver presented that information to CBP at the checkpoint.

83.     These seizures have interfered with Mylars' ability to comply with Seed-to-Sale Tracking requirements under the CRA and its ongoing business relationships and expectancies.

**IV.     CBP Seizes Mesilla Valley's State-Legal Cannabis Products and Detains its Operations Manager.**

84.     On April 4, 2024, CBP detained Mesilla Valley's operations manager at the U.S. Highway Route 70 White Sands/Alamogordo checkpoint and seized various state-legal cannabis products manufactured by Mesilla Valley, including gummies and pre-rolled joints.

85.     The Mesilla Valley state-legal cannabis products that CBP seized were all documented as required by New Mexico law and regulations promulgated by the CCD and the Mesilla Valley employee presented that information to CBP at the checkpoint.

86.      The Mesilla Valley state-legal cannabis products that CBP seized had a wholesale value of $4,320.40 and a retail value of $8,640.80.

87.     CBP did not document the seizure, provide an inventory showing what products it seized, or provide Plaintiff Mesilla Valley information as to how the seizure could be challenged or how the products would be disposed.

88.     As a result of the detention and seizure, CBP placed Mesilla Valley's operations manager on the International Drug Traffickers List although he was not prosecuted for committing any federal crime.

89.     This seizure has interfered with Mesilla Valley's ability to comply with Seed-to-Sale Tracking requirements under the CRA and its ongoing business relationships and expectancies.

**V.      CBP Seizes State-Legal Cannabis Belonging to Rollin Love.**

90.     In April of 2024, CBP seized state-legal cannabis products belonging to small retail dispensary, Rollin Love.

91.     Specifically, the CBP seized state-legal cannabis products belonging to Rollin Love from a third-party delivery service who was delivering state-legal cannabis products to Rollin Love from suppliers in Las Cruces, New Mexico that were intended for Rollin Love's medical and recreational customers.

92.     The Rollin Love state-legal cannabis products that CBP seized were all documented as required by New Mexico law and regulations promulgated by the CCD and the third-party delivery service employee presented that information to CBP at the checkpoint.

93.      The Rollin Love state-legal cannabis products that CBP seized had a total value of over $4,000.00.

94.     CBP did not document the seizure, provide an inventory showing what products it seized, or provide Plaintiff Rollin Love information as to how the seizure could be challenged or how the products would be disposed.

95.     The CBP seizure directly affected Rollin Love's business expectancies, customer relations, and ability to comply with the Seed-to-Sale Tracking requirements under the CRA.

96.     The CBP seizure further pushed back deliveries of Rollin Love's state-legal cannabis orders up to 1-2 weeks and interfered with Rollin Love's customers' direct access to state-legal medicinal and recreational cannabis products.

**VI.     CBP Seizes State-Legal Cannabis from Plaintiff Desert Peaks.**

97.     CBP seized state-legal cannabis products belonging to Desert Peaks on two separate occasions.

98.     On May 1, 2024, a Desert Peaks employee presented at the CBP checkpoint on Interstate 25 near Hatch, New Mexico in his personal vehicle while transporting Desert Peaks's state-legal cannabis flower and pre-rolled joints.

99.     A CBP canine gave a positive alert to the employee's vehicle and CBP asked the employee to pull aside for a further search.

100.     CBP discovered and seized 23 pounds of state-legal cannabis flower and 350 pre-rolled joints that were stored in boxes and black bags for shipment.

101.     The Desert Peaks state-legal cannabis products that CBP seized were all documented as required by New Mexico law and regulations promulgated by the CCD and the Desert Peaks employee presented that information to CBP at the checkpoint.

102.     The Desert Peaks state-legal cannabis products that CBP seized had a wholesale value of $25,000.00 and a retail value of $50,000.00.

103.     CBP also detained the Desert Peaks employee.

104.     Desert Peaks learned of the detention and its manager went to the checkpoint to check on its employee and inquire about the seizure.

105.    CBP denied Desert Peaks's manager access to its employee and denied his request for documentation related to the seizure.

106.    CBP detained Desert Peaks's employee for 3-4 hours and fingerprinted him.

107.    To date, CBP has failed to provide any documentation regarding the state-legal cannabis products it seized, thereby interfering with Desert Peaks's ability to comply with Seed-to-Sale Tracking requirements under the CRA and its ongoing business relationships and expectancies.

108.    On or around July 8, 2024, CBP detained the same Desert Peaks employee for a second time and seized state-legal cannabis products belonging to Desert Peaks.

109.    The second detention and seizure occurred at the White Sands Border Patrol checkpoint and the Desert Peaks employee was transporting 50 pounds of state-legal cannabis flower and 1900 pre-rolled joints.

110.    CBP did not have a canine at the booth and the cannabis products were stored in black bags and boxes inside the employee's vehicle; however, when the Desert Peaks employee pulled up to the booth, CBP asked him to pull over for a secondary inspection.

111.    At that point, CBP brought a canine who gave a positive alert for the vehicle.

112.    CBP then seized the state-legal cannabis products and took the Desert Peaks employee into custody, fingerprinted him, and detained him for 3-4 hours before finally releasing him.

113.    The Desert Peaks state-legal cannabis products that CBP seized were all documented as required by New Mexico law and regulations promulgated by the CCD and the Desert Peaks employee presented that information to CBP at the checkpoint.

114.    The Desert Peaks state-legal cannabis products that CBP seized had a wholesale value of $20,000.00 and a retail value of $40,000.00.

115.    CBP seized the state-legal cannabis products belonging to Desert Peaks without any notice or paperwork being issued to document the seizure, thereby further interfering with Desert Peaks's ability to comply with Seed-to-Sale Tracking requirements under the CRA and its ongoing business relationships and expectancies.

**VII.    CBP Detains Royal Cannabis's Delivery Driver and Seizes State-Legal Cannabis Products.**

116.    On May 15, 2024, a Royal Cannabis employee presented at the Las Cruces checkpoint located near Alamogordo, New Mexico, while in route to deliver a purchase order of state-legal cannabis to a state-licensed retailer.

117.    Upon reaching the checkpoint, CBP agents questioned Royal Cannabis's employee and indicated they smelled marijuana. The agents directed Royal Cannabis's employee to pull to the side and after the CBP canine gave a positive alert, CBP searched the vehicle, and discovered and seized the state-legal cannabis products and detained the Royal Cannabis employee.

118.    The Royal Cannabis state-legal cannabis products seized by CBP were all documented as required by New Mexico law and regulations promulgated by the CCD and the Royal Cannabis employee presented that information to the CBP at the checkpoint.

119.    The Royal Cannabis state-legal cannabis products seized by the CBP included cannabis flower, cannabis-infused beverages and a variety of pre-rolled cannabis joints with a retail value of $15,000.00.

120.     While in detention, CBP deprived the Royal Cannabis employee of his right to use his cell phone and did not give him an opportunity to call Royal Cannabis to inform it of the detention, inventoried the seized state-legal cannabis products and took the employee's mugshot and fingerprints.

121.     CBP kept the Royal Cannabis driver in detention for several hours before advising him that charges would not be prosecuted and he would be released.

122.     CBP did not give the Royal Cannabis employee any process or documentation upon release with respect to the seized state-legal cannabis products or an accounting of what happened to those products that is necessary for Royal Cannabis to comply with the Seed-to-Sale Tracking requirements under the CRA.

123.     Royal Cannabis subsequently attempted to contact CBP regarding the seizure and to inquire about the process for getting the state-legal cannabis products returned, or at least paperwork documenting its seizure, but CBP advised there was no process for getting the state-legal product back, and it had already been sent off to be destroyed. CBP further advised there was no paperwork documenting what was seized.

## VIII.  CBP is Escalating its Forfeiture Campaign, Expanding to Seizures of Vehicles Used in Plaintiffs' State-Legal Businesses

124.     Unchecked by any oversight or actual prosecution of any alleged federal crimes, CBP continues to escalate its campaign to summarily seize and forfeit New Mexico state-legal cannabis products.

125.     In the most recent seizures, CBP has become increasingly aggressive, seizing not only the state-legal cannabis products, but also the vehicles used in the Plaintiffs' state-legal

businesses to transport the state-legal cannabis products to their state-legal customers and business partners and detaining Plaintiffs' employees under increasingly harsh conditions without ever charging them with a crime.

### a. CBP Seizes and Detains Mesilla Valley's Delivery Driver and its Vehicle, Cash, and State-Legal Cannabis Products

126.    On August 6, 2024, CBP detained Mesilla Valley's delivery driver at the White Sands checkpoint along United States Highway 70 in Alamogordo, New Mexico, while in route to fill customer orders for state-legal cannabis products.

127.    Mesilla Valley's driver approached the checkpoint in a 2019 Ford Flex owned by one of Mesilla Valley's owners (the "Ford Flex"), and CBP questioned the driver regarding where he was going and who he was with.

128.    Mesilla Valley's driver answered CBP's inquiries and provided manifests for the state-legal cannabis products he was delivering, which included four customer orders for edibles and pre-rolls. The Mesilla Valley state-legal cannabis products were all documented as required by New Mexico law and regulations promulgated by the CCD.

129.    CBP then advised Mesilla Valley's driver that the products on the manifests were illegal under federal law and that there was a smell of marijuana around the vehicle.

130.    CBP brought over a canine to search the Vehicle.

131.    CBP seized the state-legal cannabis products, with a wholesale cost of $9,524.00 and a retail cost of between $20,000.00 to $25,000.00, along with Mesilla Valley's state-required compliance documents, including invoices and chain of custody records needed to comply with Seed-to-Sale Tracking requirements under the CRA.

132.    In addition, CBP seized $250.00 of Mesilla Valley's cash, which the driver had in his possession, as the proceeds from a prior delivery.

133.    CBP also seized the Ford Flex as being the instrument used to transport the state-legal cannabis products.

134.    CBP provided Mesilla Valley with no documentation or inventory as proof of the seizure or impound of the products, cash, or the Ford Flex at the time of the seizure.

135.    CBP detained the Mesilla Valley driver for over two hours and arrested him, took his fingerprints and mugshot, but did not prosecute him or advise him of what crime he was being charged with.

136.    CBP also advised the Mesilla Valley driver that he would be placed on the International Drug Traffickers List.

137.    CBP then dropped Mesilla Valley's driver off at a gas station in Alamogordo, New Mexico, over an hour from the driver's residence in Las Cruces, New Mexico, without a vehicle and he had to be picked up by another employee.

138.    Upon inquiry, CBP advised Mesilla Valley that the Ford Flex would be transported from Alamogordo, New Mexico to El Paso, Texas, and Mesilla Valley would have to send an employee to El Paso and pay a fine and 14-21 days of storage fees to recover the Ford Flex.

139.    On August 22, 2024, the CBP sent the owner of the Ford Flex a "Notice of Seizure and Information to Claimants" regarding the seizure with instructions regarding the options available for challenging the seizure and regaining possession of the Ford Flex in connection with the civil forfeiture.

140.    The August 22, 2024 Notice of Seizure and Information to Claimants did not document the seizure of the state-legal cannabis products or the cash that CBP also seized on August 6, 2024.

141.    On October 17, 2024, CBP released the Ford Flex but only after the owner paid $820.90 in towing and storage costs and Mesilla Valley incurred the cost and expense of being deprived the vehicle for use in its business for 72 days.

   **b.  CBP Detains Royal Cannabis's Driver and Seizes her Personal Vehicle along with Royal Cannabis's State-Legal Cannabis Products.**

142.    On August 28, 2024 at the border patrol station located at 1997 Highway 54 South in Alamogordo, New Mexico, CBP stopped a Royal Cannabis employee at the checkpoint in her personal vehicle, a white Audi Q3 (the "Audi Q3").

143.    At the time, the Royal Cannabis employee was transporting Royal Cannabis state-legal cannabis beverages in the trunk of the Audi Q3.

144.    When CBP initially approached the Audi Q3, its agent asked the Royal Cannabis employee to roll down her windows and alleged he could smell a strong odor of marijuana coming from the vehicle.

145.    CBP then asked the Royal Cannabis employee to open her trunk and discovered the Royal Cannabis state-legal cannabis products.

146.    The Royal Cannabis state-legal cannabis products that CBP seized were all documented as required by New Mexico law and regulations promulgated by the CCD and the Royal Cannabis employee presented that information to the CBP agents at the checkpoint.

147.    CBP asked the Royal Cannabis employee to exit the vehicle so it could conduct a further search of the Audi Q3.

148.    Upon exiting the vehicle, CBP gave the Royal Cannabis employee a form to sign and the option to make a statement, which she declined.

149.    While CBP searched the Audi Q3, CBP also attempted to search the Royal Cannabis employee for weapons in front of other traffic waiting to pass through the checkpoint before detaining her in the holding facility.

150.    Eventually, CBP searched the Royal Cannabis employee inside the holding facility, fingerprinted her, and held her in the holding area.

151.    CBP advised the Royal Cannabis employee that CBP was seizing all the state-legal (and properly documented) product as well as the employee's Audi Q3 vehicle.

152.    The Royal Cannabis state-legal cannabis products that CBP seized had a value of $5,992.00.

153.    As the Royal Cannabis employee sat in the holding area, CBP deprived her of access to her cell phone and other belongings and subjected her to unsanitary conditions.

154.    CBP allowed the Royal Cannabis employee to make one phone call to secure a ride home and allowed her to gather her belongings from the Audi Q3.

155.    CBP continued to detain the Royal Cannabis employee in the holding area while she waited for her ride, but subsequently moved her to a locked cell, despite the fact that federal authorities were not charging her with any crime.

156.    The Royal Cannabis employee told CBP that she did not consent to such confinement.

27

157.    CBP did not allow the Royal Cannabis employee to leave CBP custody until an escort arrived to drive her home.

158.    When CBP finally released the Royal Cannabis employee from custody, the employee requested the names and badge numbers for all the CBP agents involved in the seizure and detention.

159.    CBP assured the Royal Cannabis employee the requested information would be in the paperwork she would receive.

160.    The only documents that CBP provided to the Royal Cannabis employee were a "Driver/Possessor Notification of Seizure" with respect to the Audi Q3 and a signed certification regarding the currency in the Royal Cannabis employee's possession at the time of the seizure.

161.    The CBP Driver/Possessor Notification of Seizure advised that the Audi Q3 was under seizure proceedings for violation of United States law, but neither CBP nor any other Federal law enforcement agency has charged the Royal Cannabis employee with any crime.

162.    After being deprived of her personal vehicle for 43 days, on October 10, 2024, CBP remitted the Audi Q3 to the Royal Cannabis employee and waived all costs and towing and storage costs.

163.    To-date, CBP has not provided any other process to Royal Cannabis or its employee regarding the seizure of Royal Cannabis's state-legal cannabis products or any post-seizure opportunity to be heard.

164.    To-date, CBP has not provided Royal Cannabis or its driver with any documentation or accounting of the state-legal cannabis products it seized, thereby interfering with Royal

Cannabis's ability to comply with Seed-to-Sale Tracking requirements under the CRA and its ongoing business relationships and expectancies.

## FIRST CAUSE OF ACTION

**Violation of the Due Process Clause of the Fifth Amendment to the United States Constitution**

165.    Plaintiffs adopt and incorporate by reference Paragraphs 1 through 164 of the Complaint as if fully set forth herein.

166.    The Due Process Clause of the Fifth Amendment to the United States Constitution provides that, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]"

167.    Property rights are created by state law.

168.    Pursuant to the CRA, Plaintiffs' have property interests in their state-legal products, cash, and related property that are protected by the United States Constitution.

169.    Pursuant to the CRA, Plaintiffs also have a fundamental interest in operating state-legal businesses within the State of New Mexico and in accordance with New Mexico's legislative objectives.

170.    The Defendants were acting on behalf of the Federal Government when they seized Plaintiffs' property.

171.    Defendants' seizure of Plaintiffs' property, including their state-legal products, cash, and vehicles, violates the Due Process Clause of the Fifth Amendment because Defendants have deprived Plaintiffs of their liberty and property without providing any due process of law.

172.    Defendants have failed to provide any documentation with respect to the seizures, or any accounting of what property was seized, which interferes with Plaintiffs' ability to operate their state-licensed legal cannabis businesses in compliance with New Mexico law.

173.    Defendants have failed to provide any post-forfeiture notice or hearing so that Plaintiffs can challenge the seizure or obtain return of the property seized or its equivalent value.

174.    Defendants have failed to provide information regarding the status of seized property, including how the seized property will be disposed.

175.    Summarily seizing Plaintiffs' products, cash, and other property without providing any process is also contrary to the Federal Government's policy of refusing to prosecute state legal cannabis operations for violations of federal criminal offenses related to cannabis, including the CSA.

176.    Plaintiffs have sustained damages as a direct and proximate result of Defendants violation of their Fifth Amendment rights, including, but not limited to, lost profits, interrupted business expectations, and interference with Plaintiffs' ability to comply with New Mexico law.

## SECOND CAUSE OF ACTION

**Violation of Equal Protection Guarantee under the Due Process Clause of the Fifth Amendment to the United States Constitution**

177.    Plaintiffs adopt and incorporate by reference Paragraphs 1 through 176 of the Complaint as if fully set forth herein.

178.    The Fifth Amendment to the United States Constitution provides that, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]"

179.    The Due Process Clause of the Fifth Amendment includes a guarantee of equal protection equivalent to that expressly provided for under the Equal Protection Clause of the Fourteenth Amendment.

180.    Entities such as Plaintiffs, who are state-legal cannabis businesses in the state of New Mexico, are similarly situated to state-legal cannabis businesses in Arizona and California in all the characteristics relevant to the decision whether to enforce the provisions of the CSA. The CBP operates interior checkpoints in those States, yet, on information and belief, it does not summarily seize those businesses' state-legal cannabis products and associated property that pass through those checkpoints.

181.    Pursuant to the CRA, Plaintiffs' have property interests in their state-legal products, cash, and related property, and have the fundamental right to pursue their state-licensed occupations that are protected by the United States Constitution.

182.    The Defendants, acting on behalf of the Federal Government, acted irrationally and wholly arbitrarily when they intentionally seized Plaintiffs' state-legal property despite a policy and practice of not enforcing the CSA against state-legal cannabis businesses, including in other southern border states, such as Arizona and California.

183.    Defendants' differential treatment of similarly situated state-legal cannabis businesses along the southern border is motivated by ill will and illegitimate animus toward state-legal cannabis businesses, such as Plaintiffs, who happen to be residents of the state of New Mexico.

184.    Differential treatment with respect to the exercise of fundamental rights and liberty interests, such as the right to pursue an occupation, subjects Defendants' conduct to strict or at

least heightened scrutiny, which Defendants' conduct cannot withstand. Nor can Defendants' conduct withstand even rational basis scrutiny, as there is no rational reason why the Defendants should not similarly marshal their resources towards border security in New Mexico as they are doing in Arizona and California, rather than diverting those resources to enforce the CSA against state legal cannabis operators contrary to the Federal Government's "hands off" policy.

185.    Defendants' seizure of Plaintiffs' property, including their state-legal products, cash, and vehicles, deprives Plaintiffs of equal protection and equal liberty and dignity without due process, in violation of the Fifth Amendment of the United States Constitution, and will continue to do so if Plaintiffs are not afforded the relief requested.

186.    Plaintiffs have sustained damages as a direct and proximate result of Defendants violation of their Fifth Amendment rights, including, but not limited to, interference with Plaintiffs' ability to meaningfully pursue their chosen occupation, lost profits, interrupted business expectations, and interference with their ability to comply with New Mexico law.

## **THIRD CAUSE OF ACTION**

**Selective Enforcement of the CSA in Violation of the Equal Protection Guarantee under the Due Process Clause of the Fifth Amendment to the United States Constitution**

187.    Plaintiffs adopt and incorporate by reference Paragraphs 1 through 186 of the Complaint as if fully set forth herein.

188.    The Fifth Amendment to the United States Constitution provides that, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]"

189.    The Due Process Clause of the Fifth Amendment includes a guarantee of equal protection equivalent to that expressly provided for under the Equal Protection Clause of the Fourteenth Amendment.

190.    The Equal Protection Clause prohibits prosecutorial decision-making based on unjustifiable standards such as race, religion, or other arbitrary classifications.

191.    Upon information and belief, the Defendants are not enforcing the CSA against state-legal cannabis operators at border checkpoints in Arizona and California because of the Federal Government's "hands off" policy and the urgent need to focus their resources on border security.

192.    Plaintiffs, which are state-legal cannabis businesses in New Mexico, are similarly situated to state-legal cannabis businesses in Arizona and California in all the characteristics relevant to the decision whether to enforce the provisions of the CSA. The CBP operates interior checkpoints in those States, yet it does not summarily seize those businesses' state-legal cannabis products and associated property.

193.    State-legal cannabis businesses in Arizona and California that transport state-legal cannabis products through interior CBP checkpoints in those states are committing the same act as Plaintiffs in New Mexico.

194.    Accordingly, Defendants' decision to selectively enforce the CSA against state-legal cannabis businesses in New Mexico, but not against state-legal cannabis businesses in Arizona and California, has a discriminatory effect.

195.    Defendants' selective enforcement of the CSA against Plaintiffs also has a discriminatory purpose and is based on an impermissible motive because it arbitrarily and

irrationally runs counter to the Federal Government's "hands off" towards state legal cannabis operations, as well as Defendants' own policy of not wasting critical resources on the interdiction of state-legal cannabis at interior checkpoints in Arizona and California.

196.    There is no rational reason for Defendants to divert their resources to focus on summarily seizing state-legal cannabis products and related property from Plaintiffs in New Mexico, rather than focusing all their resources on the urgent need for border security as they do in Arizona and California. The intrastate transportation of state-legal cannabis products through CBP interior checkpoints in New Mexico does not present a more significant danger than when such transportation occurs in Arizona or California.

197.    Defendants' different treatment of Plaintiffs is motivated by ill will and illegitimate animus toward New Mexico state-legal cannabis businesses and violates Plaintiffs' guarantee of equal protection under the Constitution.

198.    Plaintiffs have sustained damages as a direct and proximate result of Defendants' violation of their Fifth Amendment rights, including, but not limited to, interference with Plaintiffs' ability to meaningfully pursue their chosen occupation, lost profits, interrupted business expectations, and interference with their ability to comply with New Mexico law.

## FOURTH CAUSE OF ACTION

### Violation of the Equal Sovereignty under the Tenth Amendment to the United States Constitution

199.    Plaintiffs adopt and incorporate by reference Paragraphs 1 through 198 of the Complaint as if fully set forth herein.

200.    The Tenth Amendment to the United States Constitution provides that, "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

201.    The Tenth Amendment guarantees that the states be treated as equal sovereigns.

202.    Upon information and belief, the Federal Government has never challenged the CRA or any other state law legalizing medicinal or adult-use cannabis under the Supremacy Clause of the United States Constitution.

203.    Defendants' decision to enforce the CSA and summarily seize state-legal cannabis products and related products from Plaintiffs in New Mexico, but not in any other southern border state where intrastate cannabis use has been legalized, has resulted in a geographically disparate application of the CSA in violation of the Tenth Amendment's guarantee of equal sovereignty among the states.

204.    Defendants' decision to selectively enforce the CSA at interior checkpoints within the State New Mexico also interferes with New Mexico's broad autonomy to pursue its legislative objectives and its core sovereign right to regulate intrastate commerce.

205.    Additionally, Defendants' selective enforcement interferes with New Mexico's core sovereign judicial and police processes as it has the potential to result in the influx of untraceable cannabis products within the State. It also diverts the Defendants' limited resources from ensuring the border in New Mexico is secure which has the potential to result in the influx of illegal immigrants and state-illegal substances into the State.

206.    Plaintiffs have sustained damages as a direct and proximate result of Defendants violation of the Tenth Amendment, including, but not limited to, interference with Plaintiffs' ability

to meaningfully pursue their chosen occupation, lost profits, interrupted business expectations, and interference with their ability to comply with New Mexico law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment in their favor and against Defendants, and for all of the following relief, and any further relief this Honorable Court deems just under the circumstances:

1.      Defendants shall provide all necessary paperwork and documentation accounting for all of Plaintiffs' property seized by CBP;

2.      Defendants shall return all property seized from Plaintiffs in violation of Plaintiffs' due process and equal protection rights;

3.      Defendants shall provide Plaintiffs with process for challenging the legality of any future seizures in accordance with the Due Process Clause and equal protection component of the Fifth Amendment of the United States Constitution.

4.      Defendants shall be enjoined from further violating the Tenth Amendment and shall be enjoined from future enforcement of the CSA against Plaintiffs and other state-legal cannabis businesses traveling through the interior checkpoints within the State of New Mexico, consistent with their non-enforcement of the CSA against state-legal cannabis businesses in Arizona and California.

DATED this 14th day of February, 2025.

Respectfully submitted,

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By:____*/s/Jeffrey R. Taylor*_____
Melanie Stambaugh
Jeffrey R.Taylor
Kara Murphy
201 Third Street NW, Suite 2200
Albuquerque, New Mexico 87102
Phone: (505) 765-5900
MStambaugh@rodey.com
RTaylor@rodey.com
KMurphy@rodey.com

-and-

GREENSPOON MARDER LLP


By: */s/ Ryan Holz*_____
Irina Dashevsky
Ryan Holz
Marnie A. Holz
227 W Monroe St, Ste 3950
Chicago, IL  60606
Phone: (847) 463-0663 (RMH)
Irina.dashevsky@gmlaw.com
ryan.holz@gmlaw.com
marnie.holz@gmlaw.com

*Appearing Pro Hac Vice*


*Attorneys for Plaintiffs*