## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

|  |  |
|---|---|
| MESILLA VALLEY EXTRACTS, LLC et al.,<br><br>      Plaintiffs,<br><br>      v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY et al.,<br><br>      Defendants. | Case No. 2:24-cv-1072-KJG-DLM |

## MOTION TO DISMISS

Defendants United States Department of Homeland Security and U.S. Customs and Border Protection move the Court to dismiss this action for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure and lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, for the reasons explained in the attached memorandum of points and authorities. This motion is opposed, and Defendants made a good-faith request for concurrence in accordance with Local Rule 7.1(a).

Dated: March 21, 2025

                            Respectfully submitted,

                            YAAKOV M. ROTH
                            Acting Assistant Attorney General

                            ANDREW I. WARDEN
                            Assistant Branch Director
                            Federal Programs Branch

<u>/s/ Elisabeth J. Neylan</u>
Elisabeth J. Neylan
Trial Attorney (N.Y. Bar Registration No. 6125736)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel:  (202) 616-3519
Fax:  (202) 616-8460
E-mail:  Elisabeth.J.Neylan@usdoj.gov

*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MESILLA VALLEY EXTRACTS, LLC et al.,

      Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY et al.,

      Defendants.

Case No. 2:24-cv-1072-KJG-DLM

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

# TABLES OF CONTENTS

INTRODUCTION ............................................................................................................. 1

STATUTORY AND REGULATORY BACKGROUND .................................................... 2

I.     The Controlled Substances Act ............................................................................. 2

II.    The Civil Asset Forfeiture Reform Act ................................................................. 4

III.   U.S. Customs and Border Protection ..................................................................... 6

IV.   New Mexico's Cannabis Regulation Act .............................................................. 8

V.    This Litigation ......................................................................................................... 8

STANDARDS OF REVIEW ........................................................................................... 9

ARGUMENT .................................................................................................................. 10

I.     Plaintiffs Cannot Succeed on their Due Process Challenge to the Seizures. ...... 10

    A.    Plaintiffs fail to state a claim for relief under the Due Process Clause in connection with the marijuana. ................................................................ 10

    B.    Plaintiffs' due process challenge to forfeiture of their currency also fails .............. 16

    C.    Plaintiffs lack standing to assert claims regarding the seized vehicles because the vehicles were returned. .................................................................... 20

II.    Plaintiffs Fail to State an Equal Protection Claim. ............................................. 21

III.   Plaintiffs' Tenth Amendment Claim Fails Because the CSA is a Valid Exercise of Congressional Power ............................................................................................. 24

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................................ 9, 24

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................ 9, 23

*Bordenkircher v. Hayes,*
    434 U.S. 357 (1978) ...................................................................................................... 22

*Canna Provisions, Inc. v. Garland,*
    738 F. Supp. 3d 111 (D. Mass. July 1, 2024) ............................................................. 13

*Cannon v. District of Columbia,*
    717 F.3d 200 (D.C. Cir. 2013) ...................................................................................... 12

*Cooper v. City of Greenwood,*
    904 F.2d 302 (5th Cir. 1990) .........................................................................................11

*Curry v. United States,*
    2023 WL 6890082 (3d Cir. Oct. 19, 2023) .................................................................... 5

*Davis v. Fed. Election Comm'n,*
    554 U.S. 724 (2008) ...................................................................................................... 20

*Doe v. Rogers,*
    139 F. Supp. 3d 120 (D.D.C. 2015) ............................................................................... 22

*Dusenbery v. United States,*
    534 U.S. 161 (2002) ...................................................................................................... 17

*Freeman v. City of Santa Ana,*
    68 F.3d 1180 (9th Cir. 1995) .......................................................................................... 22

*Gonzales v. Raich,*
    545 U.S. 1 (2005) .............................................................................................. 10, 13, 25

*Guttman v. Khalsa,*
    669 F.3d 1101 (10th Cir. 2012) ...................................................................................... 22

*Hackford v. Babbitt,*
    14 F.3d 1457 (10th Cir. 1994) ......................................................................................... 9

*Harrington v. DEA,*
    2006 WL 897221 (E.D. Ky. Apr. 6, 2006) .................................................................... 18

*In re Seizure of $143,265.78*,
  384 F. App'x 471 (6th Cir. 2010) ........................................................... 17

*Jackson Nat. Life Ins. Co. v. Rececconi*,
  113 N.M. 403 (1992) ............................................................................... 19

*Johnson v. United States*,
  2004 WL 2538649 (S.D. Ind. Oct. 22, 2004) ........................................ 17

*Krumm v. Holder*,
  2014 WL 11497804 (D.N.M. Mar. 19, 2014),
  *aff'd*, 594 F. App'x 497 (10th Cir. 2014) ......................................... 12, 14

*Linarez v. U.S. Dep't of Just.*,
  2 F.3d 208 (7th Cir. 1993) ...................................................................... 16

*Lupert v. California State Bar*,
  761 F.2d 1325 (9th Cir. 1985) ............................................................... 22

*Lutter v. JNESO*,
  86 F.4th 111 (3d Cir. 2023) ................................................................... 20

*Maestas v. Lujan*,
  351 F.3d 1001 (10th Cir. 2003) ............................................................... 9

*Malladi Drugs & Pharms., Ltd. v. Tandy*,
  552 F.3d 885 (D.C. Cir. 2009) ............................................................... 16

*Marin All. for Med. Marijuana v. Holder*,
  2012 WL 2862608 (N.D. Cal. July 11, 2012) ........................................ 23

*McCulloch v. Maryland*,
  17 U.S. 316 (1819) ................................................................................. 25

*Memphis Light, Gas & Water Div. v. Craft*,
  436 U.S. 1 (1978) ................................................................................... 10

*Mesa Valderrama v. United States*,
  417 F.3d 1189 (11th Cir. 2005) ............................................................. 16

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ............................................................................... 17

*New York v. United States*,
  505 U.S. 144 (1992) ............................................................................... 25

*North Dakota v. United States*,
  495 U.S. 423 (1990) ............................................................................... 25

*Papasan v. Allain*,
    478 U.S. 265 (1986) ............................................................................................. 9

*Raich v. Gonzales*,
    500 F.3d 850 (9th Cir. 2007) ....................................................................... 12, 13

*Sacramento Nonprofit Collective v. Holder*,
    552 F. App'x 680 (9th Cir. 2014) .................................................................... 23

*Sawyer v. Mid-Continent Petrol. Corp.*,
    236 F.2d 518 (10th Cir. 1956) ......................................................................... 19

*SECSYS, LLC v. Vigil*,
    666 F.3d 678 (10th Cir. 2012) .................................................................... 21, 22

*Smoke Shop, LLC v. United States*,
    761 F.3d 779 (7th Cir. 2014) ........................................................................... 11

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ....................................................................................... 20

*Steffey v. Orman*,
    461 F.3d 1218 (10th Cir. 2006) ....................................................................... 11

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ....................................................................................... 20

*United States v. 51 Pieces of Real Prop. Roswell*,
    17 F.3d 1306 (10th Cir. 1994) ......................................................................... 17

*United States v. Amalfi*,
    47 F.4th 114 (2d Cir. 2022) ............................................................................ 13

*United States v. Armstrong*,
    517 U.S. 456 (1996) ........................................................................... 21, 22, 23

*United States v. Baez*,
    464 F. App'x 623 (9th Cir. 2011) .................................................................... 18

*United States v. Canori*,
    737 F.3d 181 (2d Cir. 2013) ............................................................................ 14

*United States v. Clymore*,
    245 F.3d 1195 (10th Cir. 2001) ......................................................................... 4

*United States v. Fry*,
    787 F.2d 903 (4th Cir. 1986) .......................................................................... 13

*United States v. Griffith,*
  928 F.3d 855 (10th Cir. 2019) ............................................................ 22

*United States v. Horsley,*
  519 F.2d 1264 (5th Cir. 1975) ............................................................ 13

*United States v. Martinez-Fuerte,*
  428 U.S. 543 (1976) .......................................................................... 7

*United States v. McClendon,*
  10 F. App'x 341 (7th Cir. 2001) ......................................................... 17

*United States v. Moralez,*
  986 F.2d 1430 (10th Cir. 1992) .......................................................... 12

*United States v. Oakland Cannabis Buyers' Co-op.,*
  532 U.S. 483 (2001) .......................................................................... 3

*United States v. Rascon-Ortiz,*
  994 F.2d 749 (10th Cir. 1993) ............................................................ 7

*United States v. Texas,*
  599 U.S. 670 (2023) .......................................................................... 25

*United States v. White Plume,*
  447 F.3d 1067 (8th Cir. 2006) ............................................................ 13

*United Tribe of Shawnee Indians v. United States,*
  253 F.3d 543 (10th Cir. 2001) ....................................................... 9, 10

*Valdez v. Grisham,*
  2022 WL 2129071 (10th Cir. June 14, 2022) ..................................... 22

*Volpe v. United States,*
  543 F. Supp. 2d 113 (D. Mass. 2008) ................................................ 18

*Washington v. Glucksberg,*
  521 U.S. 702 (1997) .......................................................................... 12

**Federal Statutes**

6 U.S.C. § 211 ....................................................................... 6, 7, 14

7 U.S.C. § 1639o ............................................................................ 3

8 U.S.C. § 1357 ............................................................................. 6

18 U.S.C. § 983 ..................................................................... *passim*

19 U.S.C. § 1497 .................................................................................................. 7

21 U.S.C. § 801 ................................................................................................... 2

21 U.S.C. § 811 ................................................................................................... 3

21 U.S.C. § 812 .......................................................................................... 2, 3, 10

21 U.S.C. § 844 ............................................................................................. 7, 10

21 U.S.C. § 881 ......................................................................................... *passim*

Pub. L. No. 106-185, 114 Stat. 202 (2000) ...................................................... 4

Pub L. No. 113-235, 128 Stat. 2130 (2014) ................................................... 15

Pub. L. No. 117-328, 136 Stat. 4459 (2022) .................................................. 15

**State Statutes**

N.M. Stat. Ann. § 26-2C-1 .............................................................................. 8

N.M. Stat. Ann. § 26-2C-3 .............................................................................. 8

**The Constitution**

U.S. Const. art. VI ...................................................................................... 1, 13

U.S. Const. amend. V ..................................................................................... 10

U.S. Const. amend. X ..................................................................................... 24

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................. 9

Fed. R. Evid. 201 ........................................................................................... 12

**Regulations**

8 C.F.R. § 287.1 .............................................................................................. 6

19 C.F.R. § 162.45a ................................................................................... 11, 15

21 C.F.R. § 1308.11 ......................................................................................... 3

21 C.F.R. § 1308.43 ......................................................................................... 3

28 C.F.R. § 8.12 .............................................................................................. 6

89 Fed. Reg. 44597 (May 21, 2024) ............................................................................... 3

**Other Authorities**

Stefan D. Cassella, *Asset Forfeiture Law in the United States* (2d ed. 2013).......................... 5, 17

U.S. Customs & Border Protection, Drug Seizures, *available at*
   https://www.cbp.gov/newsroom/stats/drug-seizure-statistics .................................................. 23

**INTRODUCTION**

Plaintiffs in this action are marijuana businesses challenging seizures of their marijuana products and related property by federal agents at United States Border Patrol checkpoints in New Mexico. Plaintiffs argue that these seizures violate their rights under the United States Constitution. But the federal Controlled Substances Act lists marijuana as a Schedule I controlled substance. That Act expressly extinguishes property rights in Schedule I controlled substances and further provides that such substances are contraband subject to summary forfeiture. It is beyond dispute that the Controlled Substances Act is a valid exercise of Congress's authority under the Commerce Clause. And to the extent federal law conflicts with state law, federal law prevails. *See* U.S. Const. art. VI, cl. 2. Plaintiffs' Fifth Amendment due process and Tenth Amendment challenges to the seizures of their marijuana therefore fail to state a claim and should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs also challenge seizures of their vehicles and currency, which were also subject to forfeiture as property used to transport marijuana and money furnished in exchange for it. The vehicles were returned to Plaintiffs before this action was filed. Accordingly, Plaintiffs lack standing to seek relief stemming from the seizures of those vehicles, and those claims are subject to dismissal under Federal Rule of Civil Procedure 12(b)(1).

With respect to the currency, Plaintiffs failed to challenge its forfeiture through the prescribed administrative and judicial procedures, so it has been declared administratively forfeited in accordance with the procedures set forth in the Civil Asset Forfeiture Reform Act (CAFRA). This Court therefore lacks jurisdiction to review the merits of the administrative forfeiture. Rather, Plaintiff's sole recourse, provided by CAFRA, is to challenge the notice they received of the seizure on due process grounds. For the reasons explained below, Plaintiffs cannot

succeed on such a challenge, so this Court should dismiss for failure to state a claim. But even if Plaintiffs could succeed on a due process challenge based on lack of notice, the remedy would not be for the Government to return the seized currency, as Plaintiffs demand. Instead, the court would set aside the declaration of forfeiture "without prejudice to the right of the Government to commence a subsequent forfeiture proceeding" as to the currency. 18 U.S.C. § 983(e)(2)(A).

Finally, Plaintiffs contend that these seizures violate their right to equal protection of the laws. In support of that claim, Plaintiffs allege that federal agents do not enforce the federal drug laws against state-legal marijuana businesses passing through checkpoints in other border states. But Plaintiffs fail to allege any facts in support of that claim – let alone facts from which the Court could find it plausible that enforcing the federal drug laws against Plaintiffs is irrational and wholly arbitrary. Thus, the equal protection claims are also subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). This action should be dismissed with prejudice.

## STATUTORY AND REGULATORY BACKGROUND

### I.    The Controlled Substances Act

The federal drug laws are contained in the Controlled Substances Act (CSA), codified as amended at 21 U.S.C. § 801, *et seq*. Since the CSA's enactment, marijuana (also known as cannabis) has been classified as a Schedule I drug. 21 U.S.C. § 812(c). That classification reflects Congress's express findings that marijuana "has a high potential for abuse," that it "has no currently accepted medical use in treatment in the United States," and that "[t]here is a lack of accepted safety for use of [marijuana] under medical supervision." *Id.* § 812(b)(1). The CSA makes it unlawful for any person to "knowingly or intentionally . . . manufacture, distribute, or

dispense, or possess" marijuana. *Id.* §§ 841(a)(1), *id.* § 844(a).[1]  For purposes of the CSA, marijuana is defined as any part of the cannabis plant that contains more than 0.3 percent delta-9 tetrahydrocannabinol (THC).  *See* 21 U.S.C. § 812(c); 21 C.F.R. § 1308.11(d)(58) (defining marijuana); *see also* 7 U.S.C. § 1639o(1) (excluding hemp, defined as any part of the cannabis plant that does not exceed the 0.3 percent THC threshold, from the definition of marijuana).

The Drug Enforcement Administration (DEA) may reschedule a controlled substance pursuant to the rulemaking procedures set forth in the Administrative Procedure Act. 21 U.S.C. § 811(a); *see also* 21 C.F.R. § 1308.43 (providing for the initiation of rulemaking-proceedings).  In May of 2024, the DEA announced that it is considering rescheduling marijuana under the CSA.  *See* 89 Fed. Reg. 44597, 44601 (May 21, 2024) (Notice of Proposed Rulemaking). But the administrative proceedings for the proposed rescheduling have been postponed pending resolution of an appeal filed by a party in the proceedings.  *See Schedules of Controlled Substances: Proposed Rescheduling of Marijuana*, DEA Docket No. 1362, Hearing Docket No. 24-44 (Jan. 13, 2025) (Order Regarding Mot. to Reconsider).  Since no reclassification has occurred to date, marijuana remains a Schedule I controlled substance.

Under the CSA, all Schedule I and Schedule II controlled substances "shall be deemed contraband and seized and summarily forfeited to the United States," 21 U.S.C. § 881(f)(1), for possible destruction, 21 U.S.C. § 881(f)(2).  Thus, federal agents who lawfully encounter a Schedule I controlled substance seize it, and, because it is not possible to lawfully possess a

---

[1] Because marijuana is a Schedule I drug, the exception set forth in § 844(a), for controlled substances obtained from medical practitioners, does not apply. *See United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 491 (2001) ("Whereas some other drugs [those in schedules II through V] can be dispensed and prescribed for medical use, *see* 21 U.S.C. § 829, the same is not true for marijuana.").

Schedule I controlled substance, the person from whom the substance was seized is entitled to no additional process in connection with its forfeiture.

The CSA also subjects several other types of property associated with the illegal drug trade to forfeiture – including vehicles used to transport controlled substances and money furnished in exchange for a controlled substance.  21 U.S.C. § 881(a).  The CSA provides that "no property right shall exist in" property subject to forfeiture, *id.* § 881(a), and title in such property "shall vest in the United States upon commission of the act giving rise to forfeiture," *id.* § 881(h).  In other words, once the Government seizes property used to commit a drug offense, "it holds an unperfected right to title to it, and ownership will retroactively vest in the government from the time the illegal act was committed" upon a completed forfeiture, which can occur judicially or administratively.  *United States v. Clymore*, 245 F.3d 1195, 1200 (10th Cir. 2001).

In contrast with Schedule I and Schedule II controlled substances, forfeiting most types of seized property requires compliance with additional procedures to ensure that property owners are afforded due process.  To effectuate an administrative forfeiture of other  property – i.e. property that is not a Schedule I or Schedule II controlled substance – the Government must comply with the procedures established by CAFRA, which, as explained below, generally entail giving interested parties notice that their property has been seized and an opportunity to contest its forfeiture.

## II.    The Civil Asset Forfeiture Reform Act

The Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202 (2000) sets forth general rules for "civil forfeiture proceedings."  *See* 18 U.S.C. § 983.  Federal law establishes two types of civil forfeiture proceedings: judicial and nonjudicial (also called

administrative).[2]  *See generally* Stefan D. Cassella, *Asset Forfeiture Law in the United States* (2d ed. 2013) [hereinafter *Asset Forfeiture Law*]; *Curry v. United States*, 2023 WL 6890082, at *1 (3d Cir. Oct. 19, 2023) (unpublished).  In a judicial civil forfeiture proceeding, the Government files an *in rem* civil action against the property itself and then must prove by a preponderance of the evidence that the property was derived from or was used to commit a crime.  *See, e.g.*, 18 U.S.C. § 983(c).  By contrast, nonjudicial civil forfeiture allows the government to take ownership of seized property through an administrative process that entails no judicial involvement.

CAFRA sets forth the relevant procedures by which the Government can effect an administrative civil forfeiture.  In administrative forfeiture proceedings in which "the Government is required to send written notice to interested parties," the Government must send such notice "in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of the seizure."  *Id.* § 983(a)(1)(A)(i).

To contest the forfeiture on its merits, a person claiming property seized for forfeiture must file a claim with the seizing agency by the deadline specified in the notice.  *Id.* § 983(a)(2).  The claim must "identify the specific property being claimed, state the claimant's interest in such property; and be made under oath, subject to penalty of perjury."  *Id.* § 983(a)(2)(C)(i)–(iii).  Filing a claim terminates the administrative forfeiture proceeding.  Within 90 days of receiving a claim, the Government must "file a complaint for forfeiture," thereby initiating a judicial forfeiture proceeding, or "promptly release the property," *id.* § 983(a)(3).  But if a timely claim is not filed, the Government may issue a declaration of forfeiture, which has the "same force and effect as a

---

[2] Although CAFRA refers to an administrative forfeiture "proceeding," "[a]n administrative forfeiture is not really a proceeding at all in the judicial sense.  It is more like an abandonment." Stefan D. Cassella, *Asset Forfeiture Law in the United States* 11 (2d ed. 2013).

final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States." 28 C.F.R. § 8.12.

If a person "entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute" does not receive such notice, that person may "file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property[.]"   18 U.S.C. § 983(e)(1).  This "motion to set aside forfeiture" is "the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute." *Id.* § 983(e)(5).

Finally, CAFRA makes clear that "[t]he Government shall not be required to return contraband or other property that the person from whom the property was seized may not legally possess." *Id.* § 983(a)(1)(F); *see also id.* § 983(d)(4) ("Notwithstanding" the availability of an innocent owner defense, "no person may assert an ownership interest under [section 983(d)] in contraband or other property that it is illegal to possess.").

### III.    U.S. Customs and Border Protection

U.S. Customs and Border Protection (CBP), an agency within the U.S. Department of Homeland Security, *see* 6 U.S.C. § 211(a), was established to, among other mandates, detect and interdict terrorists, drug traffickers, human traffickers, and "other persons who may undermine the security of the United States," 6 U.S.C. § 211(c)(5).  Within CBP, the U.S. Border Patrol secures the border in the United States between ports of entry.  *See* 6 U.S.C. § 211(e).  The Border Patrol has established permanent immigration checkpoints, usually located on major highways and secondary roads, 25 to 100 miles inland, to intercept individuals who evade detection at the border. *See* 8 U.S.C. § 1357(a)(3) (authorizing federal agents to search for aliens in vehicles "within a reasonable distance from any external boundary of the United States"); 8 C.F.R. § 287.1(a)(2) (providing that reasonable distance "means within 100 air miles from any external boundary of the

United States"). The Supreme Court has endorsed the role that checkpoints play in the Border Patrol's enforcement strategy, explaining that "maintenance of a traffic-checking program in the interior is necessary because the flow of illegal aliens cannot be controlled effectively at the border." *United States v. Martinez-Fuerte*, 428 U.S. 543, 556 (1976).

Border Patrol Agents operating checkpoints act under unique legal authority. The Supreme Court has held that "a vehicle may be stopped at a fixed checkpoint for brief questioning of its occupants even though there is no reason to believe the particular vehicle contains illegal aliens." *Martinez-Fuerte*, 428 U.S. at 545. In the same vein, it is permissible for agents to refer motorists selectively to a secondary inspection area without probable cause. *Id*. at 563. While the purpose of the checkpoint is to detect and prevent unlawful immigration, Border Patrol Agents may detect contraband – including controlled substances – at an immigration checkpoint, and their authority extends to deterring and preventing the illegal passage of such contraband further into the interior. *See* 6 U.S.C. § 211(c)(5), (e)(3), and Title 21 of the United States Code; *see also United States v. Rascon-Ortiz*, 994 F.2d 749, 752 (10th Cir. 1993) ("[A] few brief questions concerning such things as vehicle ownership, cargo, destination, and travel plans may be appropriate if reasonably related to the agent's duty to prevent the unauthorized entry of individuals into this country and to prevent the smuggling of contraband.").

Agents who encounter subjects in possession of marijuana in violation of federal law, based on a test identifying the substance as marijuana, maintain appropriate enforcement authority. For example, agents are authorized to seize marijuana and other property subject to forfeiture under 21 U.S.C. § 881(a)(1), (f), arrest those who knowingly possess a controlled substance in violation of 21 U.S.C. § 844, and pursue other enforcement actions. *See, e.g.*, 19 U.S.C. § 1497 (allowing the institution of civil penalties against those who fail to declare that they possess marijuana).

## IV.    New Mexico's Cannabis Regulation Act

On April 12, 2021, New Mexico Governor Michelle Lujan Grisham signed the Cannabis Regulation Act, which legalized marijuana for adult recreational use.  N.M. Stat. Ann. § 26-2C-1 *et seq.*  New Mexico's Act legalized the cultivation, manufacturing, purchase, possession, and consumption of recreational cannabis for adults 21 years of age and older.  It also combined the regulation of adult-use recreational and medical marijuana into a single framework, administered by the state's Cannabis Control Division.  The Cannabis Control Division in turn promulgated regulations requiring marijuana businesses to record and keep track of marijuana from seed until sale.  *See* N.M. Stat. Ann. § 26-2C-3(B)(3)(b).

## V.    This Litigation

Plaintiffs, New Mexico-based marijuana businesses, filed this action against the United States Department of Homeland Security and CBP on October 22, 2024, invoking remedies under CAFRA and alleging that CBP's seizures of their marijuana products, currency, and vehicles at checkpoints in New Mexico violate the Fifth Amendment Due Process Clause of the United States Constitution.  *See* Compl. at 26, ECF No. 1.  After Defendants filed their motion to dismiss, *see* ECF No. 18, Plaintiffs filed an amended complaint on February 14, 2025.  In the amended complaint, Plaintiffs reasserted their due process claim and raised new claims under the equal protection component of the Fifth Amendment, as well as under the Tenth Amendment, *see* First Am. Compl., ECF No. 25.  Plaintiffs seek the return of all seized property and paperwork documenting those seizures, as well as an injunction against future enforcement of the federal drug laws against them and process for challenging the legality of future seizures.  *See* First Am. Compl. at 36, Prayer for Relief.

**STANDARDS OF REVIEW**

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint must contain facts sufficient to "raise a right to relief above the speculative level," and satisfy the court that the claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombly*, 550 U.S. at 556–57).

Although well-pleaded allegations are presumed to be true and viewed in the light most favorable to the plaintiff, *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994), a court need not accept as true a plaintiff's "conclusory allegations, unwarranted inferences, or legal conclusions," *Hackford*, 14 F.3d at 1465. In the same vein, a court need not credit "a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Motions to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) take one of two forms. First, a movant "may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint." *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 547 (10th Cir. 2001). In ruling on a facial challenge to jurisdiction, the court accepts the allegations in the complaint as true. *Id.* Alternatively, a moving party may "go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003). In addressing such a

factual challenge to subject matter jurisdiction, "the court does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *United Tribe of Shawnee Indians*, 253 F.3d at 547 (internal quotation marks and citation omitted).

## ARGUMENT

I.    **Plaintiffs Cannot Succeed on their Due Process Challenge to the Seizures.**

A.    **Plaintiffs fail to state a claim for relief under the Due Process Clause in connection with the marijuana.**

Plaintiffs have failed to state a claim under the Fifth Amendment in connection with the seizures of their marijuana and marijuana products. The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law," U.S. Const. amend. V. With respect to the seized marijuana, Plaintiffs' primary argument is that property rights are created by state law, First Am. Compl. ¶ 167, so summarily seizing their state-legal marijuana products violates their due process rights, First Am. Compl. ¶ 168. Not so. Plaintiffs are correct that property interests may derive from state law. *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978). But not all state-created property interests "rise[] to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Id.* (citation omitted).

Here, even though New Mexico law may create a property interest in Plaintiffs' marijuana cognizable under state law, marijuana remains contraband under federal law. *See* 21 U.S.C. § 812(c) (placing marijuana on Schedule I of the CSA), 21 U.S.C. § 844(a) (making it illegal to possess a Schedule I narcotic); *see also Gonzales v. Raich*, 545 U.S. 1, 27 (2005) ("The CSA designates marijuana as contraband for *any* purpose[.]"). Under federal law, one cannot have a property interest in contraband at all, let alone one that "rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light*, 436 U.S. at 9 (citation

10

omitted); *see also* 21 U.S.C. § 881(a)(1) (providing that all controlled substances are subject to forfeiture and "no property right shall exist in them"); 21 U.S.C. § 881(f) (subjecting Schedule I controlled substances to summary forfeiture); *Cooper v. City of Greenwood*, 904 F.2d 302, 305 (5th Cir. 1990) ("Courts will not entertain a claim contesting the confiscation of contraband *per se* because one cannot have a property right in that which is not subject to legal possession."); *cf. Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (holding that a prisoner had no legitimate property interest in contraband).

Because Plaintiffs have no cognizable property interest in their marijuana, they were entitled to no additional process in connection with its seizure and forfeiture. The bulk of allegations in the Complaint go to establishing that CBP seized exclusively marijuana and Plaintiffs did not receive notice of those marijuana seizures or an opportunity to contest its forfeiture. *See, e.g.*, First Am. Compl. ¶¶ 52–64 (marijuana products seized from Chadcor); *id.* ¶¶ 65–69, 73–76 (marijuana products seized from Super Farm); *id.* ¶¶ 77–83 (marijuana seized from Mylars); *id.* ¶¶ 84–89, 131 (marijuana seized from Mesilla Valley); *id.* ¶¶ 90–96 (marijuana products seized from Rollin Love); *id.* ¶¶ 97–115 (marijuana products seized from Desert Peaks); *id.* ¶¶ 116–123, 146 (marijuana products seized from Royal Cannabis); *see also* First Am. Compl. ¶¶ 62, 69, 75, 80, 81, 87, 94, 107, 115, 122, 123, 140, 163, 164 (all challenging notice in connection with those seizures). But Plaintiffs were not entitled to notice or an opportunity to contest the forfeiture of the marijuana. *See* 21 U.S.C. § 881(f) (providing for summary forfeiture and allowing destruction of Schedule I substances); 19 C.F.R. § 162.45a (excluding Schedule I controlled substances from notice requirements); *see also Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014) (noting that, by operation of § 881(f)(1), claimant's interest in a Schedule I controlled substance is forfeited).

Moreover, Plaintiffs were on clear notice that New Mexico's Cannabis Regulation Act conflicted with the CSA, and that federal law enforcement agents would continue to enforce federal law after New Mexico's Act went into effect. For example, on April 5, 2022, CBP's Office of Public Affairs released a statement reminding the public that "while traveling through any U.S. Border Patrol checkpoint, . . . includ[ing in] New Mexico, being in possession of marijuana is illegal under federal law." Ex. A, CBP Office of Public Affairs Statement (Apr. 5, 2022); *see also Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of information posted on a government agency's official public website (citing Fed. R. Evid. 201)). Since Plaintiffs were on notice that CBP would continue to enforce federal CSA violations with respect to marijuana, any procedural due process claim must fail.

If Plaintiffs' claims could be construed as asserting a substantive due process challenge to CBP's enforcement of CSA violations, they would have to show that they have a fundamental liberty interest in the commercial distribution of marijuana. Fundamental liberty interests must be "objectively, 'deeply rooted in this Nation's history and tradition,'" and "'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997). But courts, including those in this Circuit, have consistently declined to recognize a fundamental right to cultivate, process, and distribute marijuana. *See Krumm v. Holder*, 2014 WL 11497804, at *6 (D.N.M. Mar. 19, 2014), *aff'd*, 594 F. App'x 497 (10th Cir. 2014) (holding that there is no fundamental right to smoke marijuana or use it to treat patients); *United States v. Moralez*, 986 F.2d 1430, *1 (10th Cir. 1992) (unpublished table decision) ("[A]s federal case law makes clear, there is no fundamental right to produce or distribute marijuana commercially" (internal quotations and citation omitted)); *Raich v. Gonzales*, 500 F.3d 850, 864–66 (9th Cir. 2007) (holding that "federal law does not recognize a

fundamental right to use medical marijuana prescribed by a licensed physician to alleviate excruciating pain and human suffering"); *United States v. White Plume*, 447 F.3d 1067, 1074–76 (8th Cir. 2006) (holding that there is no substantive due process right to farm marijuana); *United States v. Amalfi*, 47 F.4th 114, 124 n.8 (2d Cir. 2022) (adhering to previous rejection of fundamental right to sell marijuana); *United States v. Fry*, 787 F.2d 903, 905 (4th Cir. 1986) ("There is no fundamental right to produce or distribute marijuana commercially."); *United States v. Horsley*, 519 F.2d 1264, 1265 (5th Cir. 1975) (same).

The choice of some states to legalize marijuana use within their own borders does not change the analysis. *See Canna Provisions, Inc. v. Garland*, 738 F. Supp. 3d 111, 123 (D. Mass. July 1, 2024) ("Although many more states have since legalized marijuana, for both medical purposes and adult use, there is still no national consensus on this issue. . . [L]egalization alone neither requires nor permits this court to recognize a fundamental right to engage in such conduct.").

Plaintiffs offer no basis for this Court to depart from this uniform and extensive authority. To the contrary, the crux of Plaintiffs' argument is that CBP's enforcement of federal law "interfere[s] with Plaintiffs' ability to comply with New Mexico law." First Am. Compl. ¶ 176. But "[t]he Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail." *Raich*, 545 U.S. at 29; *see also* U.S. Const. art. VI ("This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land").

Plaintiffs' attempts to invoke the "hands-off" policy that certain federal agencies have adopted with respect to marijuana are unavailing. First, Plaintiffs allege that it is the policy of the Attorney General not to prioritize the criminal prosecution of those who comply with state marijuana programs. *See* First Am. Compl. ¶ 31 & n.1 (citing the "Cole Memorandum"). By its

own terms, the Cole Memorandum does not create any substantive or procedural rights and "does not alter in any way the Department's authority to enforce federal law, including federal laws relating to marijuana, regardless of state law." Cole Memorandum at 4. Nor does it provide "a legal defense to a violation of federal law, including any civil or criminal violation of the CSA." *Id.*

Plaintiffs also note that the Department of the Treasury, which is charged with enforcing certain money-laundering statutes, issued its own marijuana-related guidance to financial institutions concurrently with the Cole Memorandum. First Am. Compl. ¶ 31 & n.2 (citing "FinCEN guidance"). But CBP and the Border Patrol are agencies with the Department of Homeland Security, not the Department of Justice or the Department of the Treasury. *See* 6 U.S.C. § 211. The policy memoranda adopted by those agencies are therefore irrelevant to CBP's authority to enforce federal law, as is DOJ's decision not to prosecute the individuals mentioned in the Complaint, who were properly detained by CBP for violating federal law. *See* First Am. Compl. ¶ 58 (Chadcor driver detained but not prosecuted); *id.* ¶¶ 84, 88 (Mylars driver detained but not prosecuted); *id.* ¶¶ 106, 108, 112 (Desert Peaks employee detained but not prosecuted); *id.* ¶¶ 117, 121, 149, 155 (Royal Cannabis employee detained but not prosecuted); *id.* ¶ 135 (Mesilla Valley driver detained but not prosecuted); *see also United States v. Canori*, 737 F.3d 181, 183–85 (2d Cir. 2013) (holding that marijuana remains a Schedule I controlled substance even in states where it is legalized, and the decision to exercise prosecutorial discretion with respect to marijuana does not undermine "principles of federalism, preemption, or the supremacy of federal law"); *cf. Krumm*, 2014 WL 11497804, at *3 n.2.

For the same reasons, Plaintiffs cannot successfully invoke the Rohrabacher-Farr Amendment – a rider in an omnibus appropriations bill, as a basis to challenge CBP's seizure of

their marijuana. That rider provides that DOJ may not use funds made available to it to prevent states from implementing their own medical marijuana laws. First Am. Compl. ¶ 31 & n.3. *See* Consolidated Appropriations Act, 2015, Pub L. No. 113-235, § 538, 128 Stat. 2130, 2217 (2014). The Rohrabacher-Farr Amendment, which has been renewed yearly, by its own terms applies only to DOJ. *See* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, § 531, 136 Stat. 4459, 4561 (2022) ("None of the funds made available under this Act *to the Department of Justice* may be used . . . ." (emphasis added)). Plaintiffs' reliance on it as a basis to challenge CBP's seizure is misplaced.

Finally, if Plaintiffs' claims as to the marijuana and marijuana products could be construed as a motion to set aside forfeiture under CAFRA, 18 U.S.C. § 983(e), *see* First Am. Compl. ¶ 9, that motion should also be denied. CAFRA provides that, in administrative forfeiture proceedings in which "the Government is required to send written notice to interested parties," it must do so "as soon as practicable" within 60 days of the seizure. 18 U.S.C. § 983(a)(1)(A)(i). A person "entitled to written notice" who does not receive it may file a motion to set aside a declaration of forfeiture under section 983(e). But those provisions are irrelevant here because the CSA subjects Schedule I controlled substances to summary forfeiture and destruction, *see* 21 U.S.C. § 881(f), and CBP regulations accordingly exempt Schedule I controlled substances from notice requirements. *See* 19 C.F.R. § 162.45a. Even if CAFRA procedures did govern the forfeiture of the marijuana, CAFRA makes clear that "[t]he Government shall not be required to return contraband or other property that the person from whom the property was seized may not legally possess." 18 U.S.C. § 983(a)(1)(F). So any CAFRA claim as to the marijuana should be dismissed for failure to state a claim.

**B.    Plaintiffs' due process challenge to forfeiture of their currency also fails.**

Plaintiffs cannot state a claim under CAFRA to set aside the declaration of forfeiture of the currency.  In contrast to the marijuana, CAFRA procedures apply to the forfeiture of the currency because drug proceeds, though subject to forfeiture under the CSA, are not subject to *summary* forfeiture like Schedule I controlled substances.  *See* 21 U.S.C. § 881(a), (f).  Here, the notice requirements in CAFRA section 983(a) apply to the forfeited currency, and the motion to set aside forfeiture under section 983(e) provides "the exclusive remedy for seeking to set aside [the] declaration of forfeiture," 18 U.S.C. § 983(e)(5).

In ruling on a motion to set aside a declaration of forfeiture under section 983(e), the Court's jurisdiction extends only to due process challenges based on a lack of notice.  *See* 18 U.S.C. § 983(e)(1) ("Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture . . .").  The court does not have jurisdiction under section 983(e) to review the merits of the forfeiture proceeding or to adjudicate constitutional challenges to the forfeiture other than those based on a lack of notice.  *See Mesa Valderrama v. United States*, 417 F.3d 1189, 1196 (11th Cir. 2005) (noting that the court lacks jurisdiction to review the merits of an administrative forfeiture and may only determine whether the agency followed proper procedural safeguards); *Linarez v. U.S. Dep't of Just.*, 2 F.3d 208, 213 (7th Cir. 1993) ("[A] forfeiture cannot be challenged in district court under any legal theory if the claims *could have* been raised in an administrative proceeding, but *were not*."); *accord Malladi Drugs & Pharms., Ltd. v. Tandy*, 552 F.3d 885, 890 (D.C. Cir. 2009) ("The forfeiture statutes and regulations provide alternative, not sequential, administrative and legal remedies for an administrative forfeiture.").

To prevail on the merits of their section 983(e) challenge, Plaintiffs must show that the Government knew or should have known of their interest in the property but failed to take reasonable steps to provide them with notice, *see* 18 U.S.C. § 983(e)(1)(A), and that they "did not know or have reason to know of the seizure within sufficient time to timely file a claim," 18 U.S.C. § 983(e)(1)(B); *see also United States v. McClendon*, 10 F. App'x 341, 344 (7th Cir. 2001) (unpublished) (noting that the movant has the burden under section 983(e)); *Johnson v. United States*, 2004 WL 2538649, at *2 (S.D. Ind. Oct. 22, 2004) (same).

The first requirement of section 983(e) invokes the due process standards articulated by the Supreme Court in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) and applied to the administrative forfeiture context in *Dusenbery v. United States*, 534 U.S. 161, 167 (2002). Due process in this context requires "only that the Government's effort be reasonably calculated to apprise a party of the pendency of the action," *Dusenbery*, 534 U.S. at 170 (internal quotation marks omitted); *see also Mullane*, 339 U.S. at 314 (holding that due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). But "[d]ue process does not require . . . that the interested party actually receive notice." *United States v. 51 Pieces of Real Prop. Roswell*, 17 F.3d 1306, 1316 (10th Cir. 1994).

The second prong of Section 983(e)(1) "simply codifies the long-standing rule that a person who had actual notice cannot complain that the Government's attempts to send him notice were inadequate." *Asset Forfeiture Law* at 219. And that prong refers only to a claimant's knowledge or reason to know of the seizure, not of the forfeiture proceeding. 18 U.S.C. § 983(e)(1)(B); *see also In re Seizure of $143,265.78*, 384 F. App'x 471, 474 (6th Cir. 2010) (unpublished) (holding that a bank could not challenge the forfeiture of funds seized from its accounts under section 983(e)

because it had actual knowledge of the seizure in time to file a claim); *Harrington v. DEA*, 2006 WL 897221, at \*4 (E.D. Ky. Apr. 6, 2006) (holding that a claimant who knew the DEA had seized money from him in time to file a claim could not satisfy section 983(e)(1)(B)); *United States v. Baez*, 464 F. App'x 623, 623 (9th Cir. 2011) (unpublished) (holding that claimant cannot show he lacked knowledge or reason to know of the seizure when the money was seized from his person); *but see Volpe v. United States*, 543 F. Supp. 2d 113, 119 (D. Mass. 2008) (holding that actual notice of the forfeiture proceeding is required).

Here, Plaintiffs challenge CBP's seizure of their currency on two separate occasions. *See* First Am. Compl. ¶¶ 72, 132. Wholly absent from the Complaint, however, are any allegations that the Government failed to take reasonable steps to notify Plaintiffs of the currency seizures or that Plaintiffs did not know or have reason to know of those seizures in time to file a claim with the agency. The absence of those allegations defeats their claim.

First, Plaintiffs allege that CBP seized "cash parcels" belonging to Super Farm on May 24, 2024. *See* First Am. Compl. ¶ 72. But rather than allege that Super Farm did not know or have reason to know of that seizure, the Complaint only alleges that CBP failed to provide notice of the contemporaneous seizure of the marijuana, which, as explained above, was not required. *See id.* ¶¶ 75, 76 (focusing on the marijuana).

Second, Plaintiffs assert that CBP seized $250 of Mesilla Valley's cash proceeds from a marijuana delivery on August 6, 2024. *See* First Am. Compl. ¶ 132. As to that seizure, the Complaint also alleges that "CBP provided Mesilla Valley with no documentation or inventory as proof of the seizure or impound of the products, cash, or the Ford Flex *at the time of the seizure*." *Id.* ¶ 134 (emphasis added). But neither CAFRA nor due process requires notice at the time of the

seizure.  *See* 18 U.S.C. § 983(a)(1)(A)(i) (requiring that the Government send notice to interested parties "as soon as practicable, and in no case more than 60 days after the date of the seizure").

Nor could Plaintiffs plausibly plead that they lacked knowledge or reason to know of those seizures.  In each of the above incidents, Plaintiffs concede that the individuals physically present at the time of the seizure were either employees of their businesses or third-party delivery drivers they hired.  *See* First Am. Compl. ¶ 65 (third-party delivery driver); First Am. Compl. ¶ 126 (Mesilla Valley's delivery driver).  And "[s]ince a corporation can act only through its officers, agents and employees," the general rule is that the corporation is "chargeable with the composite knowledge of its officers and agents acting within the scope of their authority."  *Sawyer v. Mid-Continent Petrol. Corp.*, 236 F.2d 518, 520 (10th Cir. 1956); *cf. Jackson Nat. Life Ins. Co. v. Receconi*, 113 N.M. 403, 412 (1992) ("[N]otice to an agent, or knowledge imparted to him, is notice to the company, regardless of whether or not the agent actually communicates the information to the company.").

Even if that were not the case, the Plaintiff businesses would still have to show that they lacked "*reason to know* of the seizure[s] within sufficient time to timely file a claim."  18 U.S.C. § 983(e)(1)(B) (emphasis added).  But each currency seizure occurred at a Border Patrol checkpoint contemporaneously with CBP's seizure of Plaintiffs' marijuana.  Plaintiffs posit that these seizures resulted in a significant loss of revenue, upset their business operations, and made it difficult for them to comply with New Mexico cannabis regulators and their required seed-to-sale tracking obligations.  *See* First Am. Compl. ¶¶ 75, 131.  These allegations are facially inconsistent with the contention that they lacked notice of the seizures of currency associated with the seizures of marijuana, so Plaintiffs cannot plausibly allege a lack of notice.  Accordingly, their § 983(e) claim should be dismissed for failure to state a claim.

19

Even if a court were to set aside the forfeiture under § 983(e), Plaintiffs would not be entitled to the automatic return of the currency. *See* First Am. Compl. at 36, Prayer for Relief (seeking return of all seized property). At that point, the Government could commence a new forfeiture proceeding, *see* 18 U.S.C. § 983(e)(2), to forfeit the currency, which is indisputably subject to forfeiture under 21 U.S.C. § 881(a)(6) because, as Plaintiffs concede, it is money furnished in exchange for a controlled substance. *See, e.g.*, First Am. Compl. ¶ 132 ("CBP seized $250 of Mesilla Valley's cash, which the driver had in his possession, as the proceeds from a prior delivery."); *id.* ¶ 72 (cash belonged to Super Farm). For all the above reasons, Plaintiffs' motion should be denied.

**C.    Plaintiffs lack standing to assert claims regarding the seized vehicles because the vehicles were returned.**

The Court lacks jurisdiction to adjudicate the claims as to the seized vehicles because those vehicles were returned to claimants before the Complaint was filed. The doctrine of Article III standing, which stems from the Constitution's case-or-controversy limitation on judicial power, requires that the party invoking federal jurisdiction have a sufficient "stake in the outcome when the suit was filed." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). To have standing, a Plaintiff must plausibly allege (i) an injury-in-fact (ii) that is fairly traceable to the conduct of the party sued and (iii) judicially redressable. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs bear the burden of demonstrating that they meet those requirements "for each claim that they press and for each form of relief that they seek," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *see also Lutter v. JNESO*, 86 F.4th 111, 124 (3d Cir. 2023).

Here, Plaintiffs seek the "return [of] all property seized from [them]," First Am. Compl. at 36, Prayer for Relief. And they claim that CBP seized vehicles on two occasions. *See* First Am. Compl. ¶ 133 (CBP seized Ford Flex belonging to Mesilla Valley's delivery driver); *id.* ¶ 151 (CBP

seized Audi Q3 belonging to employee of Royal Cannabis).  But Plaintiffs concede that both vehicles' owners received a "Notice of Seizure and Information to Claimants" with instructions regarding regaining possession of the vehicles.  *See id.* ¶ 139; *id.* ¶¶ 160, 161.  Plaintiffs further concede that the Ford Flex and Audi were in fact remitted to the claimant-owners on October 17, 2024, and October 10, 2024, respectively.  *See id.* ¶¶ 141, 162.  Since both vehicles were returned before this Complaint was filed on October 22, 2024, this Court cannot redress any claimed injury stemming from the seizure of those vehicles and should dismiss those claims for lack of subject matter jurisdiction.

## II.    Plaintiffs Fail to State an Equal Protection Claim.

Plaintiffs argue that enforcing the Controlled Substances Act against them also violates the equal protection component of the Fifth Amendment's Due Process Clause.  *See* First Am. Compl., Second Cause of Action & Third Cause of Action.  They contend that the CBP does not summarily seize marijuana and related property from "similarly situated" state-legal marijuana businesses in Arizona and California.  *Id.* ¶ 180.  Even assuming the allegations in the Complaint are true, Plaintiffs have failed to plausibly allege that the Government action here fails rational basis review.

The equal protection component of the Due Process clause ensures "that like cases are treated alike, that those who appear similarly situated are not treated differently without, at the very least, a rational reason for the difference." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 684–85 (10th Cir. 2012) (citation and internal quotation marks omitted).  Unless the government action is based on "an unjustifiable standard such as race, religion, or other arbitrary classification," *United States v. Armstrong*, 517 U.S. 456, 464 (1996), or "selectively burden[s] fundamental rights," the Government action need only be rational.  *SECSYS, LLC*, 666 F.3d at 687.

Here, because there is no suspect class or fundamental right involved, the rational basis standard applies. *Contra* First Am. Compl. ¶ 184 (asserting that heightened scrutiny applies). As explained above, *see infra* Argument Section I.A., there is no fundamental constitutional right to commercially distribute marijuana. Plaintiffs' attempt to reframe the right at issue as "the right to pursue an occupation" does not change the analysis. *Id.*; *see Guttman v. Khalsa*, 669 F.3d 1101, 1118 (10th Cir. 2012) ("[The] right to practice in [one's] chosen profession . . . does not invoke heightened scrutiny."); *see also Valdez v. Grisham*, 2022 WL 2129071, at \*4 (10th Cir. June 14, 2022) (rejecting argument that Plaintiff had a fundamental right to engage in her chosen profession); *Lupert v. California State Bar*, 761 F.2d 1325, 1327 n.2 (9th Cir. 1985) ("There is no basis in law for the argument that the right to pursue one's chosen profession is a fundamental right for the purpose of invoking strict scrutiny under the Equal Protection Clause."); *Doe v. Rogers*, 139 F. Supp. 3d 120, 156 (D.D.C. 2015) ("The right to pursue one's chosen occupation . . . has never been recognized as 'fundamental' in federal jurisprudence[.]"). Rational basis review therefore applies.

To proceed with their equal protection claims, then, Plaintiffs must show that they were intentionally treated differently from others similarly situated and, if they make that showing, they must further plausibly allege that there is no "rational basis" for the differential treatment. *SECSYS, LLC*, 666 F.3d at 688; *see also United States v. Griffith*, 928 F.3d 855, 866 (10th Cir. 2019) (quoting *Armstrong*, 517 U.S. at 465). And "[s]elective enforcement of valid laws, without more, does not make the defendants' action irrational." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1188 (9th Cir. 1995) (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). In attempting to show irrational and wholly arbitrary Government action, Plaintiffs shoulder a

heavy burden.  *See Armstrong*, 517 U.S. at 463 ("[T]he standard is a demanding one.").  They have not met that burden here.

At the outset, Plaintiffs' conclusory assertion that the Federal Government does not enforce the CSA in Arizona and California is wholly unsupported, *see* First Am. Compl. ¶ 180.  Plaintiffs have failed to identify any state-legal cannabis businesses in those states – let alone such businesses that are similarly situated to, yet treated differently from, Plaintiffs.  *See Armstrong*, 517 U.S. at 470 (stating that "a credible showing of different treatment of similarly situated persons" is required).  Their equal protection claims should be dismissed on that basis alone.  *See Twombly*, 550 U.S. at 555, 570 (explaining that the complaint must contain facts sufficient to "raise a right to relief above the speculative level" and satisfy the court that the claim is "plausible on its face."); *cf. Marin All. for Med. Marijuana v. Holder*, 2012 WL 2862608, at *13 (N.D. Cal. July 11, 2012), *aff'd sub nom. Sacramento Nonprofit Collective v. Holder*, 552 F. App'x 680 (9th Cir. 2014) (dismissing Plaintiffs' selective prosecution-based equal protection claim because Plaintiffs failed to allege sufficient facts demonstrating that entities in other jurisdictions are similarly situated to them or that any alleged disparity in enforcement of the CSA was attributable to an impermissible discriminatory motive).

Their claim is especially implausible given that Border Patrol Agents in every jurisdiction operate pursuant to the same statutes and policies.  And the Court may take judicial notice of publicly available statistics showing that Border Patrol Agents in Arizona and California do indeed seize marijuana there, further undermining Plaintiffs' claims.  *See* Ex. B (compiling statistics from a publicly available government website[3] that reports drug seizures for the following relevant

---

[3] U.S. Customs & Border Protection, Drug Seizures, *available at* https://www.cbp.gov/newsroom/stats/drug-seizure-statistics (last visited Mar. 19, 2025).

sectors: El Paso (which covers west Texas and New Mexico), Tucson (Arizona), Yuma (Arizona), El Centro (California) and San Diego (California)).  Of course, those statistics do not distinguish between "state-legal" and "illegal" marijuana, but CBP does not make such a distinction because all marijuana is illegal under federal law.  For those reasons, Plaintiffs have failed to plausibly allege that they were treated differently from other similarly situated entities.

Plaintiffs also have failed to make a cognizable allegation of discriminatory motive. Plaintiffs contend they are being treated differently than cannabis businesses in Arizona and California, but geography alone is not an inherently improper factor.  To the contrary, the characteristics of a particular jurisdiction – such as its available resources and the extent of a problem, relative to other jurisdictions and relative to other problems in that jurisdiction – could indeed provide legitimate reasons for concentrating enforcement efforts in a particular way.  Where there are a number of "obvious alternative explanation[s]," improper motive cannot be inferred. *Iqbal*, 556 U.S. at 682.  The Court should therefore disregard Plaintiffs' conclusory and unsupported allegation that enforcing the CSA against them is irrational and wholly arbitrary, "motivated by ill will and illegitimate animus toward state-legal cannabis businesses" in New Mexico.  First Am. Compl. ¶ 183.  Plaintiffs' equal protection claims should be dismissed for failure to state a claim.

### III.  Plaintiffs' Tenth Amendment Claim Fails Because the CSA is a Valid Exercise of Congressional Power.

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people," U.S. Const. amend. X.  Plaintiffs contend that the enforcement of federal drug laws within New Mexico violates the Tenth Amendment because it "interferes with New Mexico's broad autonomy to pursue its legislative objectives and its core sovereign right to regulate intrastate

24

commerce." First. Am. Compl. ¶ 204. But, as the Supreme Court has held, "[i]f a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States," *New York v. United States*, 505 U.S. 144, 156 (1992). It is well settled that the power to regulate even the intrastate possession, manufacturing, and distribution of marijuana is a valid exercise of the Commerce Clause, *Gonzales*, 545 U.S. at 9, so Plaintiffs' Tenth Amendment claim must fail.

Finally, although Plaintiffs complain that enforcing the CSA against them in New Mexico "diverts the Defendant's limited resources from ensuring the border in New Mexico is secure which has the potential to result in the influx of illegal immigrants and state-illegal substances into the State," First Am. Compl. ¶ 205, neither Plaintiffs nor the State of New Mexico has the authority to dictate how the United States expends its resources or prioritizes border security. *See United States v. Texas*, 599 U.S. 670, 678 (2023) (holding that Texas lacked standing to challenge DHS's border enforcement priorities); *McCulloch v. Maryland*, 17 U.S. 316, 436 (1819) ("[T]he states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the . . . [Federal] government."); *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (noting that states cannot directly regulate the United States).

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action with prejudice.


Dated: March 21, 2025

                                  Respectfully submitted,

                                  YAAKOV M. ROTH
                                  Acting Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

*/s/ Elisabeth J. Neylan*
Elisabeth J. Neylan
Trial Attorney (N.Y. Bar Reg. No. 6125736)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Tel:  (202) 616-3519
Fax:  (202) 616-8460
E-mail:  Elisabeth.J.Neylan@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 21, 2025, the foregoing pleading was filed electronically

through the CM/ECF system, which causes all parties or counsel to be served by electronic

means as more fully reflected on the Notice of Electronic Filing.

*/s/ Elisabeth J. Neylan*
Elisabeth J. Neylan
United States Department of Justice
Civil Division, Federal Programs Branch

*Counsel for Defendants*
