IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MESILLA VALLEY EXTRACTS, LLC, et al.,

     Plaintiffs,

v.                                  No. 2:24-cv-1072-KG-DLM

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, et al.,

     Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the Court on Defendants' motion to dismiss Plaintiffs' amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for lack of jurisdiction under Rule 12(b)(1). Doc. 27. For the reasons below, the motion is granted. The Court dismisses Plaintiffs' Fifth Amendment procedural due process claims regarding their cannabis products and cash under Rule 12(b)(6) with prejudice; Fifth Amendment procedural due process claim regarding their vehicles under Rule 12(b)(1) without prejudice; Fifth Amendment equal protection claims under Rule 12(b)(6) without prejudice; and Tenth Amendment equal sovereignty claims under Rule 12(b)(6) with prejudice.

**I.**     ***Background***

     **A.**     ***Legal Framework***

States' "loosening restrictions on marijuana has led to some tension between state and federal law." *United States v. Stacy*, 156 F.4th 994, 1000 (10th Cir. 2025). Under federal law, marijuana (cannabis) is classified as a Schedule I controlled substance under the Controlled Substances Act ("CSA"). 21 U.S.C. § 812(c). The CSA makes it unlawful "to manufacture,

distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." *Id.* § 841(a)(1).

New Mexico law, however, permits the possession and use of recreational marijuana. In April 2021, New Mexico legalized cannabis for adult use through the Cannabis Regulation Act ("CRA"). *See* NMSA 1978, § 26-2C-25(A) (Cum. Supp. 2021). The CRA authorizes the "cultivation, production, possession, manufacture, transportation, and sale" of cannabis and cannabis products in New Mexico. *Id.* To implement this framework, the Cannabis Control Division ("CCD") adopted mandatory rules requiring cannabis establishments to maintain records and track cannabis "from seed to sale" to prevent diversion to "unregulated or illegal markets within the state." NMSA 1978, § 26-2C-3(B)(3)(b).

### B.    Summary of the Facts

The Court draws the following facts from Plaintiffs' amended complaint. Doc. 25. On twelve occasions, Customs and Border Protection ("CBP") seized cannabis products from "state-legal cannabis businesses"—Chadcor, Import Farms, Super Farm, Mylars, Mesilla Valley, Rollin Love, Desert Peaks, and Royal Cannabis—at highway checkpoint stops in New Mexico. *Id.* at 1. At each stop, the individual transporting the cannabis products presented documentation demonstrating compliance with New Mexico's statutory scheme. *Id.* at 14–22, 26.

**First Stop.** On February 14, 2024, CBP agents stopped a Chadcor employee at a checkpoint on Interstate 25 ("I-25") north of Las Cruces, New Mexico. *Id.* at 6, 13–14. "The CBP had drug sniffing canines on patrol at the checkpoint," and "the canine signaled a positive alert on the Chadcor...vehicle." *Id.* at 14. CBP agents seized "state-legal cannabis products in the vehicle belonging to Chadcor and Import Farms," detained the delivery driver "for several hours," and entered him into a federal database for racketeering and international drug

2

trafficking.  *Id.*  CBP agents told the employee that a letter would be sent with "instructions for how Chadcor could be reimbursed" for the seized products, but Chadcor never received the letter.  *Id.* at 15.  Chadcor lost merchandise valued at $139,000, and the seizure "damaged...Import Farm's production schedule."  *Id.* at 13–14.

**Second Stop.**  On March 26, 2024, CBP agents stopped a third-party driver at the same I-25 checkpoint and seized Super Farm's "state-legal cannabis products," valued at approximately $55,000.  *Id.* at 15.

**Third Stop.**  On March 26, 2024, CBP agents seized approximately $12,000 worth of Mylars' "state-legal cannabis products" from a third-party driver at the same I-25 border checkpoint.  *Id.* at 17.

**Fourth Stop.**  On April 4, 2024, CBP detained Mesilla Valley's operations manager at a border checkpoint on US Highway Route 70 near White Sands and "seized various state-legal cannabis products" with a retail value of $8,640.80.  *Id.* at 18.  The CBP agents "placed" the employee "on the International Drug Traffickers List" but did not "prosecute[]" him.  *Id.*

**Fifth Stop.**  In April 2024, CBP agents seized approximately $4,000 worth of "state-legal cannabis products belonging to Rollin Love" from a third-party delivery service.  *Id.* at 19.

**Sixth Stop.**  On May 1, 2024, a "CBP canine gave a positive alert to" a Desert Peak vehicle.  *Id.* at 20.  CBP agents seized "23 pounds of state-legal cannabis flower and 250 pre-rolled joints" with a retail value of approximately $50,000 and "detained" the Desert Peaks driver "for 3–4 hours and fingerprinted him."  *Id.*  When a Desert Peaks manager arrived at the detention center, CBP refused to provide documentation related to the seizure.  *Id.*

**Seventh Stop.**  On May 15, 2024, CBP agents stopped a Royal Cannabis employee at a border checkpoint near Alamogordo because "they smelled marijuana" in his vehicle and a "CBP

canine gave a positive alert." *Id.* at 22.  Agents "seized...cannabis products" valued at

approximately $15,000, detained the driver for 3 to 4 hours, "deprived" him "of his...cell phone,"

and took his "mugshot and fingerprints." *Id.*  When Royal Cannabis contacted CBP, agents

"advised there was no process for getting" the "product back." *Id.*

      **Eighth Stop.**  On May 24, 2024, CBP stopped a third-party delivery driver after a "CBP

canine gave a positive alert on [a] vehicle" in Rincon, New Mexico.  *Id.* at 16.  Agents seized

Super Farm's "state-legal cannabis products," valued at $12,000, and "cash parcels." *Id.*  CBP

detained the driver, fingerprinted her, and charged her with drug smuggling.  *Id.*  CBP later

dropped the charges and returned the driver's vehicle but "retained" the "cash parcels" and

cannabis products.  *Id.*  CBP "never provided [Super Farm] with any process or post-seizure

opportunity to challenge the seizure." *Id.* at 17.  CBP posted notice of the cash seizure at the

Border Patrol Sector Headquarters in El Paso, Texas, and online through *Forfeiture.gov*.[1]

      **Ninth Stop.**  On July 8, 2024, "a canine...gave a positive alert" on a Desert Peaks vehicle

stopped at a checkpoint.  *Id.* at 21–22.  CBP "detained the same Desert Peaks employee for a

second time" and "seized" Desert Peaks' "state-legal cannabis products" valued at approximately

$40,000.  *Id.*  CBP "took the...employee into custody, fingerprinted him, and detained him for 3–

4 hours." *Id.* at 21.

      **Tenth Stop.**  On July 19, 2024, CBP agents "seized" Mylars' "cannabis products" from a

third-party driver at the Las Cruces border checkpoint.  *Id.* at 17.

      **Eleventh Stop.**  On August 6, 2024, at a White Sands checkpoint, CBP agents stopped a

Mesilla Valley employee and seized "state-legal cannabis products" with a retail value between

---

[1] The Court takes judicial notice of the declarations as "a matter of public record."  *Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000).

$20,000 and $25,000. *Id.* at 24. CBP also seized "$250.00 of Mesilla Valley's cash...as the proceeds from a prior delivery," and the employee's vehicle as "the instrument used to transport the" cannabis. *Id.* at 25. CBP "detained the Mesilla Valley driver for over two hours and arrested him, took his fingerprints and mugshot," and advised him that he would be placed on the International Drug Traffickers List. *Id.* CBP "dropped" the employee "off at a gas station...over an hour from" his residence "without a vehicle." *Id.* CBP later mailed Mesilla Valley instructions for "challenging the seizure and regaining possession" of the vehicle but "did not document the seizure of the state-legal cannabis products or the cash." *Id.* at 25–26. CBP posted notice of the cash seizure at the Border Patrol Sector Headquarters in El Paso, Texas, and online through *Forfeiture.gov*.[2] CBP ultimately released the vehicle 72 days after the seizure. *Id.* at 26.

**Twelfth Stop.** On August 28, 2024, at the border patrol station near Alamogordo, a CBP agent "stopped a Royal Cannabis employee" in "her personal vehicle," because he "could smell a strong odor of marijuana coming from the vehicle." *Id.* at 26. "While CBP searched" the vehicle, agents "attempted to search the Royal Cannabis employee for weapons in front of other traffic waiting to pass through the checkpoint" before detaining her in a holding facility. *Id.* at 27. Inside the facility, CBP "searched" and "fingerprinted" her. *Id.* CBP "deprived" the employee of "access to her cell phones and other belongings and subjected her to unsanitary conditions." *Id.* CBP ultimately seized "state-legal cannabis products" worth $5,992 and the employee's vehicle. *Id.* CBP sent the employee a "Driver/Possessor Notification of Seizure" for her vehicle and "a signed certification regarding the" seized currency. *Id.* at 28. Eventually, "CBP remitted the [vehicle] to" the employee after 43 days. *Id.*

---

[2] The Court takes judicial notice of the declarations as "a matter of public record." *Van Woudenberg*, 211 F.3d at 568.

C.    *Procedural History*

Plaintiffs filed this lawsuit against the Department of Homeland Security ("DHS") and CBP in October 2024, asserting three constitutional claims.  First, Plaintiffs allege that Defendants violated the Fifth Amendment by seizing their cannabis products, cash, and vehicles without adequate procedural due process.  *See* Count 1, Doc. 25 at 29.  Second, Plaintiffs allege that Defendants violated the Fifth Amendment's Equal Protection Clause by seizing their cannabis products while declining to seize the cannabis products of similarly situated businesses in Arizona and California.  *See* Counts 2 & 3, Doc. 25 at 30–34.  Finally, Plaintiffs allege that Defendants violated the Tenth Amendment and the principle of equal sovereignty by interfering with New Mexico's cannabis regulatory scheme.  *See* Count 4, Doc. 25 at 34–36.  Plaintiffs seek an order requiring Defendants to return their property, provide constitutionally adequate procedures to challenge the legality of future seizures, and stop seizing Plaintiffs' property going forward.  *See* Doc. 25 at 26.  Defendants move to dismiss all claims under Rule 12(b)(1) and 12(b)(6).  *See generally* Doc. 27.

## II.    *Standards of Review*

To survive a Rule 12(b)(6) motion to dismiss, the complaint must state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  A claim is plausible only when the plaintiff pleads factual content allowing the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Well-pleaded allegations are accepted as true and viewed in the plaintiff's favor, but "conclusory allegations, unwarranted inferences, [and] legal conclusions" are not credited. *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994).  Courts may "take judicial

notice of [their] own files and records, as well as facts which are a matter of public record," when resolving a Rule 12(b)(6) motion. *Van Woudenberg*, 211 F.3d at 568.

A Rule 12(b)(1) motion to dismiss may present either a facial or factual challenge to subject-matter jurisdiction. A movant may "make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint," *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 547 (10th Cir. 2001), or "present[] evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003). Subject-matter jurisdiction requires an actual, ongoing controversy "at all stages of review," and a claim becomes moot when the Court can no longer grant effectual relief. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). When assessing subject-matter jurisdiction, the Court has "wide discretion to" consider "other documents" beyond the complaint. *Shawnee Indians*, 253 F.3d at 547.

## III.    *Analysis*

For the reasons below, the Court dismisses (A) Plaintiffs' procedural due process claim; (B) Plaintiffs' equal protection claims; and (C) Plaintiffs' Tenth Amendment and equal sovereignty claims.

### A.    *Plaintiffs' procedural due process claim fails.*

In count one, Plaintiffs allege that "Defendants' seizure of Plaintiffs' property, including their state-legal products, cash, and vehicles, violates the Due Process Clause of the Fifth Amendment because Defendants have deprived Plaintiffs of their liberty and property without providing any due process of law." Doc. 25 at 29. The Court disagrees and dismisses this count.

Procedural due process claims turn on whether the individual "possess[ed] a protected interest such that the due process protections were applicable" and, if so, whether the individual

"was afforded an appropriate level of process." *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004). It is well established that due process is required before the government may forfeit property. *See United States v. $8,850 in United States Currency*, 461 U.S. 555, 562–65 (1983); *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48–49 (1993) (collecting cases). At minimum, the government must provide the person whose property is at stake with notice "reasonably calculated under all of the circumstances" to apprise him or her of the pendency of the forfeiture and an opportunity to object. *Dusenbery v. United States*, 534 U.S. 161, 167–70 (2002).

> 1.    *Plaintiffs' procedural due process claim regarding their cannabis products is dismissed under Rule 12(b)(6) with prejudice.*

Plaintiffs allege that Defendants seized their cannabis products without any due process on twelve separate occasions. *See* Doc. 25 at 13–29. Defendants move to dismiss under Rule 12(b)(6), arguing that Plaintiffs "have no cognizable property interest in their marijuana"—which remains illegal under federal law—and that Plaintiffs therefore "were entitled to no additional process in connection with [the marijuana's] seizure and forfeiture." Doc. 27 at 21. The Court agrees.

Procedural due process does not protect property that is contraband per se. Contraband per se consists of objects that are "intrinsically illegal in character," the possession of which, "without more, constitutes a crime." *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 699–700 (1965). Because "one cannot have a property right in that which is not subject to legal possession," courts "will not entertain" procedural due process claims challenging the seizure or retention of contraband per se. *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1213 (10th Cir. 2001). Indeed, Congress has decreed explicitly that Schedule I controlled substances are "deemed contraband and seized and summarily forfeited to the United States." 881(f).

"Marijuana possession is a federal crime" under § 844, and "marijuana remains contraband under federal law whether or not it is legal" under state law. *United States v. Rodriguez*, 472 F. Supp. 3d 1098, 1113 (D.N.M. 2020). "Because marijuana is contraband per se under federal law, Plaintiffs lack a cognizable property interest in its" possession, cultivation, or distribution. *Casias v. City of Pueblo*, 2021 WL 5558863, at *7 (D. Colo.); *see also Salazar v. City of Adelanto*, 2020 WL 5778122, at *7 (C.D. Cal.) (same and collecting cases). Because Plaintiffs lacked a cognizable property interest in the marijuana products, they were not entitled to post-forfeiture notice or a hearing to challenge the seizure of those products. *Rodriguez-Aguirre*, 264 F.3d at 1213.

Courts have repeatedly rejected due process claims alleging property rights to or business interests in marijuana. In *River N. Props. v. City and County of Denver*, 2014 WL 7437048 (D. Colo.), for example, the plaintiff landowner claimed a cognizable property interest in its contractual relationship with a medical marijuana business. The court rejected the claim because "Plaintiff's federal claims rest...on its loss of benefits from a lease with a tenant who grew medical marijuana, and federal law does not recognize" the right to cultivate marijuana. *Id.* at *2. "[B]y definition," the plaintiff could not state a procedural due process claim because it lacked "a federally protected right." *Id.* Similarly, in *Marble v. Strecker*, 2014 WL 1404896, at *9 (D. Mont.), a state-licensed medical marijuana provider asserted a due process claim based on alleged property interests in his provider license. The court rejected the claim because, "even assuming Plaintiff has property interests in his medical marijuana provider license" and "associated profession...under state law," those interests were "not constitutionally protected." *Id.* Because the plaintiff had "no...legally protected interest in" marijuana, he could not establish a federally protected property interest. *Id.*

These decisions persuade the Court. Here too, Plaintiffs' state-law interests are not constitutionally protected property interests under federal law. Plaintiffs' asserted interests arise solely from the possession, cultivation, and distribution of marijuana—conduct that federal law prohibits. *See* Doc. 25 at 1. Because federal law does not recognize property interests in marijuana or marijuana-related activities, Plaintiffs' procedural due process claim fails at the threshold. *Rodriguez-Aguirre*, 264 F.3d at 1213.

Resisting these conclusions, Plaintiffs argue that CBP's seizures are "contrary" to the federal government's "hands-off" approach toward state-legal cannabis programs and individuals complying with state law. Doc. 25 at 9. The Tenth Circuit has recognized that "states' loosening restrictions on marijuana has led to some tension between state and federal law," and that "Congress and the DOJ have... acknowledged state-level legalization and shifted their enforcement priorities accordingly." *Stacy*, 156 F.4th at 1000. Plaintiffs point to four developments as evidence of that shift: the 2013 Cole Memo, the 2014 FinCen Guidance, the 2015 Rohrabacher–Farr Amendment, and the DOJ's proposal to reclassify marijuana as a Schedule III substance. These developments, however, do not alter federal law, and the Court is required to apply the CSA's plain text.[3] Marijuana remains contraband under federal law

---

[3] First, as Plaintiffs concede, the Cole Memo is an internal DOJ guidance document setting enforcement priorities and was explicitly rescinded in 2018. *See* Doc. 25 at 9; James M. Cole, Guidance Regarding Marijuana Enforcement (Aug. 29, 2013), https://www.govinfo.gov/app/details/GOVPUB-J-PURL-gpo140706.

The FinCEN Guidance, issued by the Department of the Treasury, "clarif[ies]...expectations for financial institutions seeking to provide services to marijuana-related businesses" and is non-binding. BSA Expectations Regarding Marijuana-Related Businesses, 26 Fed. Sent. R. 242, 242, 2014 WL 4745521 (Vera Inst. Just.).

The Rohrabacher–Farr Amendment is an appropriations rider that "prohibits the...Department of Justice from spending current states' implementation of their own medical marijuana laws." *Sandusky v. Goetz*, 944 F.3d 1240, 1244 (10th Cir. 2019). It does not amend the CSA, reclassify marijuana, or extend beyond the medical-marijuana context. Consolidated Appropriations Act, 2024, Pub. L. No. 118–42, § 531, 138 Stat. 25, 174 (2024).

notwithstanding evolving enforcement policies or prospective regulatory changes.[4]  Plaintiffs'

procedural due process claim regarding their cannabis products therefore fails to state a claim

under Rule 12(b)(6) and is dismissed with prejudice.

> 2.    *Plaintiffs' procedural due process claim regarding their cash parcels is dismissed under Rule 12(b)(6) with prejudice.*

Plaintiffs next allege that CBP seized cash proceeds from Super Farm and Mesilla Valley

"without providing" them "any due process."  *See* Doc. 25 at 10, 25–26, 30.  Defendants move to

dismiss under Rule 12(b)(6), arguing that CBP offered adequate procedures to challenge the

seizures under the Civil Asset Forfeiture Reform Act ("CAFRA").  Doc. 27 at 28.  The Court

agrees that Plaintiffs fail to state a CAFRA claim under 12(b)(6).

CAFRA provides the "exclusive remedy for seeking to set aside a declaration of

forfeiture under a civil forfeiture statute" and limits the Court's review to the issue of notice.  18

U.S.C. § 983(e)(1), (5); *see also United States v. Cobb*, 646 Fed. Appx 70, 72 (2d Cir.

2016) (noting that federal courts retain jurisdiction to determine only "whether the agency

followed the proper procedural safeguards when it declared claimant's property summarily

---

Furthermore, it only restricts Department of Justice funding and does not apply to agents from
other agencies such as CBP officers within DHS.  *Id.*

Finally, the DOJ's proposed rulemaking to reclassify marijuana as a Schedule III
substance has not been finalized and therefore lacks binding legal effect.  A hearing on the
proposed rulemaking remains on hold pending an appeal.  *See* Schedules of Controlled
Substances: Rescheduling of Marijuana, 89 Fed. Reg. 44,597 (May 21, 2024).  Therefore,
"[d]espite the proposed rulemaking...federal law regarding cannabis has not substantially
changed" and "[c]annabis remains a Schedule I drug."  *New Mexico Top Organics-Ultra Health
v. Blue Cross & Blue Shield of New Mexico*, 785 F. Supp. 3d 968, 974 (D.N.M. 2025).

[4] The Court recognizes Plaintiffs' unusual position, having acted in compliance with state
law amid shifting federal enforcement policies.  Nevertheless, the Court's purview is limited to
determining whether CBP *could* lawfully seize the cannabis products under current federal law,
not whether it *should* have done so.

forfeited"). "Any person entitled to written notice" who does not receive it may move to set

aside the forfeiture. § 983(e)(1). To prevail, a claimant must demonstrate that:

> (A) the Government knew, or reasonably should have known, of the moving party's
> interest and failed to take reasonable steps to provide such party with notice; and
> (B) the moving party did not know or have reason to know of the seizure within sufficient
> time to file a timely claim.

§ 983(e)(1)(A)–(B).

To satisfy § 983(e)(1)(A), Plaintiffs must show that CBP failed to provide notice

"reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

of the action." *Mullane v. Cent. Hanover Bank & Trust*, 339 U.S. 306, 314 (1950); *see also*

*Dusenbery v. United States*, 534 U.S. 161, 170 (2002). As a "general rule," "notice by

publication is not enough" where the interested party's "name and address are known or very

easily ascertainable." *Schroeder v. City of New York*, 371 U.S. 208, 212–13 (1962).

To satisfy § 983(e)(1)(B), a claimant must show he did not "know or have reason to

know" of the seizure in time to file a claim. "[S]ome courts have concluded that the moving

party's mere knowledge that his property has been seized," alone, "defeats a Section 983(e)

motion." *Mikhaylov v. United States*, 29 F. Supp. 3d 260, 270 (E.D.N.Y. 2014); *see, e.g.*,

*Johnson v. U.S.*, 2004 WL 2538649, at *4 (S.D. Ind.). Other courts require that such knowledge

be "agency-specific—that is, that the moving party know enough about the forfeiting agency's

involvement in the seizure 'to file a claim with [that] agency,' even if he is not aware that it

intends to forfeit his property." *Mikhaylov*, 29 F. Supp. 3d at 270; *see, e.g.*, *Bermudez v. City of*

*New York Police Department*, 2008 WL 3397919, at *6 (S.D.N.Y.). Under this formulation, "the

moving party's knowledge of the seizure *and* the identity of the forfeiting agency behind the

seizure is necessary to defeat a Section 983(e) motion." *Mikhaylov*, 29 F. Supp. 3d at 270.

Plaintiffs satisfy the first prong of § 983(e)(1) by plausibly alleging that CBP failed to provide them with adequate notice. Due process requires the government to give parties direct notice when their "name and address are known or very easily ascertainable." *Schroeder*, 371 U.S. at 212–13; *see also Nunley v. Dep't of Just.*, 425 F.3d 1132, 1136 (8th Cir. 2005) (notice by publication alone "is insufficient where...the name and address of the interested person are known"). Although CBP posted notice of the seizures at the Border Patrol Sector Headquarters in El Paso, Texas, and on *Forfeiture.gov*, Plaintiffs allege that CBP did not provide direct notice. *See* Doc. 31-1 at 2–3; Doc. 31-2 at 2; *see also* Doc. 25 at 17, 25–26. CBP could have readily identified Super Farm and Mesilla Valley—CBP seized the cash from delivery drivers who identified themselves and presented state-issued licenses and company identification linking the property to Plaintiffs. *See* Doc. 25 at 17, 25–26. In fact, CBP *did* send Mesilla Valley a Notice of Seizure concerning its vehicle, confirming that the agency had the company's address and could have also provided direct notice of the cash seizures. *Id.* at 17, 25–26.

Plaintiffs, however, fail to satisfy the second prong of § 983(e)(1), as they do not plausibly allege insufficient knowledge of the seizures in time to file a claim. Plaintiffs allege that CBP agents seized more than $12,000 in cannabis products and cash from a third-party delivery driver acting on Super Farm's behalf at a CBP border checkpoint—conduct that disrupted Plaintiffs' tracking obligations and business relationships. Doc. 25 at 16–17. They also allege that CBP agents seized $250 in cash directly from a Mesilla Valley employee, giving Plaintiffs immediate, actual knowledge of the seizure. *Id.* at 25. In their complaint, Plaintiffs repeatedly refer to the officers involved as "CBP" or "CBP agents." *See generally* Doc. 25. Together, these allegations show that Plaintiffs knew, or reasonably could have ascertained, that CBP seized their cash in time for them to file a claim. *See Harper v. United States*, 2016 WL

4994996, at *11 (E.D.N.Y.) (rejecting CAFRA claim where plaintiff was present during the seizure and called the seizing officers "federal" and "DEA agents" in his complaint); *Mikhaylov*, 29 F. Supp. 3d at 270 (same where plaintiff "was present for the seizure, during which the agents identified themselves as DEA agents"); *Eleidy v. United States*, 2023 WL 8284369, at *4 (E.D.N.C.) (same); *United States v. Russell*, 2006 WL 2786883, at *3 (M.D. Ala.) (same). Accordingly, Plaintiffs fail to plausibly allege a § 983(e)(1)(B) violation. Plaintiffs' due process claim regarding the cash is therefore dismissed under 12(b)(6) with prejudice.

> 3. *Plaintiff's due process claim regarding their vehicles is dismissed under Rule 12(b)(1) without prejudice.*

Next, Plaintiffs allege that Defendants seized vehicles from Mesilla Valley and Royal Cannabis without adequate process. *See* Doc. 25 at 26, 28. Defendants argue that this claim should be dismissed as moot under Rule 12(b)(1) because the vehicles were returned to their owners before Plaintiffs filed the Complaint. Doc. 27 at 20. The Court agrees. When the government no longer possesses the subject property after its forfeiture, a claimant's request for its return becomes "moot" because the court can no longer grant effective relief. *Id.*; *see also London Fin. Grp. v. IRS*, 2016 WL 10907056, at *6 (C.D. Cal.). Plaintiffs concede that CBP provided notice with instructions on how to challenge the seizures and ultimately returned both vehicles to their owners. *See* Doc. 25 at 25–26, 28. Plaintiffs request only injunctive relief. *See id.* at 36. Because the Court can no longer grant effective relief, the claim is moot. *See United States v. Bastien*, 2013 WL 1701601, at *4 (E.D.N.Y.) ("Given the documentary evidence indicating that those items were previously returned...motion for return of property that relates to those particular items is denied as moot."); *United States v. Holmes*, 2013 WL 237187, at *1 (S.D.N.Y.); *Ferreira v. United States*, 354 F. Supp. 2d 406, 410 (S.D.N.Y. 2005). Plaintiffs' due process claim as to the vehicles is therefore dismissed without prejudice.

14

**B.    Plaintiffs' equal protection claims are dismissed under Rule 12(b)(6) without prejudice.**

Plaintiffs allege that CBP violated the Equal Protection Clause of the Fifth Amendment under class-of-one and selective enforcement theories.  Under equal protection doctrine, the government "shall not treat similarly situated persons differently unless the dissimilar treatment is rationally related to a legitimate legislative objective." *Jurado-Gutierrez v. Greene*, 190 F.3d 1135, 1152 (10th Cir. 1999).  Courts apply strict scrutiny "only if" the challenged action targets "a suspect class or involve[s] a fundamental right." *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002).  There is "no fundamental right to produce or distribute marijuana commercially." *United States v. Moralez*, 986 F.2d 1430 (10th Cir. 1992).  There is also no fundamental right "to practice in [one's] chosen profession." *Guttman v. Khalsa*, 669 F.3d 1101, 1118 (10th Cir. 2012).

**1.    Plaintiffs' class-of-one claim**

Plaintiffs allege in count two that Defendants violated the Fifth Amendment's Equal Protection Clause by seizing Plaintiffs' cannabis products "despite a policy and practice of not enforcing the CSA against state-legal cannabis businesses...in other southern border states, such as Arizona and California."  Doc. 25 at 31.  Defendants move to dismiss this claim under Rule 12(b)(6), arguing that it lacks merit under controlling law.  Doc. 27 at 33.  The Court agrees and dismisses the "class-of-one" claim without prejudice.

Where plaintiffs are not members of a suspect class and do not allege the deprivation of a fundamental right, they may pursue an equal protection claim under a "class-of-one" theory. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  These claims are disfavored because when "looking only at one individual there is no way to know whether the alleged difference in treatment was" based on "legitimate or illegitimate considerations without a

comprehensive and largely subjective canvassing of all possible relevant factors." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1214 (10th Cir. 2004).  To prevail, a plaintiff "must first establish that others similarly situated in every material respect were treated differently," and "then show this difference in treatment was without rational basis, that is, the government action was irrational and abusive, and wholly unrelated to any legitimate state activity." *Kansas Penn Gaming v. Collins,* 656 F.3d 1210, 1216 (10th Cir.2011).  "It is...imperative for the class-of-one plaintiff to provide a specific and detailed account of the nature of the preferred treatment of the favored class." *Jennings*, 383 F.3d at 1214.

Plaintiffs fail to satisfy this demanding standard.  They allege that their businesses are "similarly situated" to "state-legal cannabis businesses in Arizona and California in all the characteristics relevant to the decision whether to enforce the provisions of the CSA."  Doc. 25 at 31.  But these allegations are conclusory and lack details for comparison concerning, for example, business size, licensing status, regulatory requirements, or operational circumstances. In fact, Plaintiffs fail to identify a single specific comparator, a requirement for a class-of-one claim.  *See Rocky Mountain Rogues, Inc. v. Town of Alpine*, 375 Fed. Appx 887, 896 (10th Cir. 2010) (dismissing a class-of-one claim where the complaint failed to identify an adequate comparator); *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998) (same where the complaint failed to "present a single instance" where the comparator was similarly situated to the plaintiff).

Plaintiffs not only fail to identify similarly situated comparators, they also fail to plausibly allege that "the government action was irrational and abusive, and wholly unrelated to any legitimate state activity."  *Kansas Penn Gaming*, 656 F.3d at 1216.  Plaintiffs allege that CBP was "motivated by ill will and illegitimate animus" toward "legal cannabis businesses...who

happen to be residents of the state of New Mexico," but offer no factual allegations to support that assertion. Doc. 25 at 34. Accordingly, Plaintiffs' class-of-one equal protection claim is dismissed without prejudice. Plaintiffs may file an amended complaint attempting to remedy these pleading deficiencies.

### 2. *Plaintiffs' selective prosecution claim*

Plaintiffs next allege in count three that Defendants violated the Fifth Amendment's Equal Protection Clause by selectively enforcing the CSA against state-legal cannabis businesses in New Mexico. They assert that Defendants "had no rational reason" for diverting resources from border security to seizing cannabis products in New Mexico while prioritizing border enforcement in other states. Doc. 25 at 34. The Court construes these allegations as a selective enforcement claim. The claim is dismissed without prejudice.

To state a selective enforcement claim, Plaintiffs must plausibly allege that they were "singled out for prosecution while others similarly situated" were not, and that the government's decision was "invidious or in bad faith" and based on an impermissible consideration "such as race, religion, or the desire to prevent the exercise of constitutional rights." *United States v. Salazar*, 720 F.2d 1482, 1487 (10th Cir. 1983). Because allegations challenging enforcement priorities are generally unsuited for judicial review, the standard for stating such a claim is "demanding." *United States v. Armstrong*, 517 U.S. 456, 464–65 (1996).

Plaintiffs do not meet this rigorous standard. Their claim rests on the assertion that Defendants diverted enforcement resources to seize state-legal cannabis products in New Mexico rather than prioritizing border enforcement, as Defendants do in other states. Doc. 25 at 34. That allegation, even if true, does not support a selective enforcement claim. Plaintiffs identify no similarly situated individuals or businesses who were treated differently and allege no facts

17

suggesting that Defendants acted with impermissible motives. Either deficiency is fatal. *See Roberts v. City of Newark*, 2024 WL 3513044, at *1 (D.N.J.) (dismissing a selective prosecution claim because Plaintiffs failed to identify "similarly situated" individuals); *Tu My Tong v. New Mexico*, 2015 WL 12803772, at *7 (D.N.M.) (same where plaintiff failed to allege "discriminatory intent or effect").

Plaintiffs speculate that CBP acted out of "ill will and illegitimate animus" toward New Mexico state-legal cannabis businesses. But speculation does not satisfy the "rigorous standard" required to state a selective prosecution claim. *United States v. Armstrong*, 517 U.S. 456, 468 (1996); *see also United States v. Furman*, 31 F.3d 1034, 1037 (10th Cir. 1994). The Court need not credit conclusory allegations in a complaint that are unsupported by factual allegations. *Hackford*, 14 F.3d at 1465. Plaintiffs' selective prosecution claim is therefore dismissed without prejudice. Plaintiffs may file an amended complaint attempting to address these issues.

C.    **Plaintiffs' Tenth Amendment and Equal Sovereignty claims are dismissed under Rule 12(b)(6) with prejudice.**

Finally, in count four, Plaintiffs allege that CBP and DHS violated the Tenth Amendment and equal sovereignty principles by interfering with New Mexico's regulatory regime and enforcing the CSA in New Mexico but not in other states. Doc. 25 at 35. These allegations fail to state a claim and conflict with another constitutional provision: the Supremacy Clause.

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the States respectively, or to the people." U.S. Const. amend. X. The Amendment, however, does not bar the federal government from enforcing federal law. Where federal and state law conflict, "federal law prevails and state law is preempted" under the Supremacy Clause. *Murphy v. NCAA*, 584 U.S. 453, 471 (2018). The Supreme Court "long ago rejected the suggestion that Congress invades

18

areas reserved to the States by the Tenth Amendment simply because it exercises its authority under the Commerce Clause in a manner that displaces" state law. *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 291 (1981). The CSA is a valid exercise of Congress' Commerce Clause authority, and the Supremacy Clause "unambiguously provides" that it governs even in states that have adopted more permissive cannabis laws. *Gonzales v. Raich*, 545 U.S. 1, 29 (2005). Accordingly, the government's enforcement of the CSA does not violate the Tenth Amendment merely because New Mexico enacted a conflicting regulatory scheme. *See United States v. Canori*, 737 F.3d 181, 185 (2d Cir. 2013); *Murphey v. United States*, 726 F. Supp. 3d 1039, 1057 (D. Ariz. 2024), *aff'd*, 2025 WL 1026217 (9th Cir. Apr. 7, 2025). Plaintiffs therefore fails to state a Tenth Amendment claim.

Plaintiffs' equal sovereignty claim also fails. The principle of equal sovereignty recognizes that "the constitutional equality of the states is essential to the harmonious operation of the scheme upon which the Republic was organized." *Coyle v. Smith*, 221 U.S. 559, 580 (1911). Although differential treatment of the states "can be justified in some cases," equal sovereignty is implicated when Congress enacts a statute that, by its terms, imposes unequal geographic burdens on the states. *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 203 (2009); *see also Shelby County v. Holder*, 570 U.S. 529, 544–45 (2013). Under these principles, the CSA does not violate equal sovereignty doctrine. By its terms, the statute applies uniformly to all states and imposes no unequal geographic burdens. It preempts conflicting state marijuana laws and subjects all states to the same federal legal regime. *Cocroft v. Graham*, 122 F.4th 176, 184 (5th Cir. 2024); *see also United States v. Inzer*, 2015 WL 3404672, at *4 (M.D. Fla.) ("[A]rgument that enforcement of the CSA is being applied inconsistently between the states is without merit as the CSA, appropriately enacted pursuant to Congress' Commerce

Clause power, preempts conflicting state laws."). Differences in discretionary enforcement do not impose unequal legal obligations on the states and do not trigger equal sovereignty concerns. *See United States v. Taylor*, 2014 WL 12676320, at *6 (W.D. Mich) (rejecting an equal sovereignty claim based on alleged disparities in federal marijuana enforcement); *United States v. Olea*, 2016 WL 8730167, at *4 (D. Mass.) (same). Plaintiffs' equal sovereignty claim is therefore dismissed with prejudice under Rule 12(b)(6).

IV.    ***Conclusion***

The Court dismisses Plaintiffs':

1)    Fifth Amendment procedural due process claims concerning their cannabis products and cash proceeds under Rule 12(b)(6) with prejudice;

2)    Fifth Amendment procedural due process claim concerning their vehicles without prejudice as moot under Rule 12(b)(1);

3)    Fifth Amendment equal protection claims under Rule 12(b)(6) without prejudice; and

4)    Tenth Amendment and equal sovereignty claims under Rule 12(b)(6) with prejudice.

It is **SO** ordered.

/s/Kenneth J.Gonzales
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.